**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert Leon McCARTY, Defendant–Appellant.**

**No. 87–2278.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1988.
Decided Nov. 14, 1988.

**144**

Michael J. Cohn, Milwaukee, Wis., for defendant-appellant.

Ann M. Kisting, Asst. U.S. Atty., Patricia J. Gorence, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before POSNER, EASTERBROOK and MANION, Circuit Judges.

MANION, Circuit Judge.

On January 28, 1987, two Milwaukee police officers stopped a car driven by Robert McCarty, a convicted felon. In his car, the officers found a handgun. A grand jury indicted McCarty on one count of possessing a firearm after having been convicted of a felony, 18 U.S.C. § 922(g)(1). McCarty filed a motion to dismiss the indictment and a motion to suppress evidence seized and statements made at the time of his arrest. The district court denied both motions. McCarty subsequently entered a conditional guilty plea to the count charged in the indictment; the plea agreement reserved McCarty's right to appeal the district court's denying his motions to dismiss and to suppress. *See* Fed.R.Crim.P. 11(a)(2). McCarty now brings that appeal. We affirm.

### I.

18 U.S.C. § 922(g) makes it a federal crime for "any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm." The indictment charged, in pertinent part, that "on or about January 28, 1987, in the State and Eastern District of Wisconsin," McCarty,

> having been convicted on August 27, 1985, in the United States District Court for the Eastern District of Wisconsin of interstate transportation of firearms by a convicted felon and making false statements in the acquisition of a firearm, crimes punishable by imprisonment exceeding one year, did knowingly *possess in and affecting commerce*, a firearm, to wit, a Smith and Wesson .44 magnum caliber revolver, serial number N850472.

(Emphasis added.) McCarty contends that the language "did knowingly possess in and affecting commerce" makes the indictment impermissibly vague. According to McCarty, the government was required to specifically plead the facts showing *how* he possessed the firearm in or affecting commerce.

An indictment is sufficient if it states the essential elements of the offense

charged, fairly informs the defendant of the charges against him so that he may prepare a defense, and protects the defendant against future prosecution that may result in double jeopardy. *United States v. Johnson*, 805 F.2d 753, 757–58 (7th Cir. 1986). Judged by this standard, the indictment is sufficient. The indictment against McCarty tracked § 922(g) and stated the date and place of his alleged possession. The indictment also specifically identified the handgun McCarty possessed by make, caliber, and serial number. By tracking the statute, the indictment properly alleged the elements of a § 922(g) violation. Also, the detail in the indictment, particularly the specificity with which it described the handgun, protected McCarty against double jeopardy.

The language "did knowingly possess in and affecting commerce" adequately charged the interstate commerce element of § 922(g) and was sufficient to allow McCarty to prepare a defense to that charge. To prove the required nexus between a defendant's possession and interstate commerce, the government only has to show that the firearm traveled in interstate commerce at some time. *See United States v. Lowe*, 860 F.2d 1370, 1374 (7th Cir.1988); *United States v. Gillies*, 851 F.2d 492, 493–94 (1st Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988); *see also Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed. 2d 582 (1977) (interpreting the interstate commerce nexus required by 18 U.S.C.App. 1202(a), the almost identically-worded predecessor to the possession offense now found in § 922(g)); H.R.Rep. No. 99–495, at 23, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1327, 1349 (explaining that the Firearm Owners' Protection Act of 1986, P.L. 99–308, repealed 18 U.S.C.App.

1202(a) but carried its provisions over into § 922(g)). As we have noted, the indictment identified the handgun that McCarty possessed by make, caliber, and serial number. Given the minimal interstate nexus § 922(g) requires, the detailed information about the handgun was more than enough for McCarty to discover how to defend against the interstate commerce element of the charge.

McCarty has cited no case law to support his contention that the government had to plead the interstate commerce element more specifically. What case law there is supports the conclusion that the general allegation that McCarty possessed the handgun "in and affecting commerce" was sufficient. In *United States v. Williams*, 679 F.2d 504, 507–09 (5th Cir.1982), the government charged the defendant with affecting interstate commerce by means of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951. The indictment alleged no underlying facts concerning how the defendant's extortion affected interstate commerce. The Fifth Circuit held that alleging interstate commerce effects in conclusory terms was sufficient. Similarly, in *United States v. Metzger*, 778 F.2d 1195, 1200 (6th Cir.1985), the Sixth Circuit held that an indictment charging the defendant with transporting explosives in interstate commerce and destroying a vehicle used in interstate commerce was not insufficient because it did not define interstate commerce. In *Dees v. United States*, 789 F.2d 1521, 1522 (11th Cir.1986) (per curiam), the Eleventh Circuit rejected as "frivolous" a contention that an indictment charging receipt of a firearm by a felon under 18 U.S.C. § 922(h) was insufficient where the indictment tracked the statute, and stated the date, time, place, and participants involved.[1] And most recently, this circuit, in

---

1. The *Dees* court stated that Dees had been indicted for possession under § 922(h). The Firearms Owners' Protection Act of 1986, Pub.L. No. 99–308, § 102(7), amended § 922(h) to make it illegal for anybody employed by a person disqualified from possessing a firearm under § 922(g) from transporting, possessing, or receiving a firearm. The amendment's effective date was November 15, 1986. *See* Pub.L. No. 99–308, § 110(a). Before that date, § 922(h)

prohibited various people (for example, convicted felons and fugitives from justice) from *receiving* firearms; it did not include a possession offense. The Eleventh Circuit decided *Dees* on May 23, 1986. Therefore, Dees had to have been indicted for receiving a firearm under former § 922(h) rather than possessing a firearm. The Firearms Owners' Protection Act combined in one section, § 922(g), all the offenses relating to the receipt, possession, and transportation of

*United States v. Lowe, supra,* held that an indictment charging that the defendant possessed a firearm "that had previously traveled in interstate commerce" sufficiently charged the interstate commerce element of the possession offense under § 922(g). *See Lowe* at 1373–74.[2] Following the lead of *Williams, Metzger, Dees,* and *Lowe,* we conclude that the district court properly denied McCarty's motion to dismiss the indictment as impermissibly vague.

## II.

McCarty also filed a motion to suppress, alleging that the police illegally searched his car. The district court denied that motion after an evidentiary hearing before a magistrate and another hearing before the district judge. The evidence showed that in mid-January, 1987, John Santiago, a Milwaukee police officer, told Detective Joseph Nowicki about a conversation Santiago had had with McCarty in Scott E's, a bar on Milwaukee's south side. According to Santiago, McCarty said he was a bounty hunter for the United State's Marshal's Office. McCarty said that he liked south side bars because he did not have to carry his gun. Santiago described McCarty as a white male, approximately six feet four to six feet five inches tall, with short, well-trimmed hair.

On January 27, Nowicki received a telephone call from a confidential informant. The informant told Nowicki that he had seen McCarty with a large handgun and that McCarty was looking for Gary Wolf, an agent or informant who had "put him away." The confidential informant described McCarty to Nowicki; the informant's description matched Santiago's, except that the informant supplied the additional detail that McCarty bore a tattooed star on the webbing of his right hand.

Early the next morning, at Scott E's, Nowicki recognized McCarty based on Santiago's and the informant's descriptions; Nowicki specifically observed the distinctive star tattoo on McCarty's right hand. Nowicki saw McCarty write a check. Printed on the check were the names Robert McCarty and Stephanie McCarty, and the address 2923 S. 46th Street, Milwaukee, Wisconsin. Nowicki also overheard a conversation between McCarty and the bartender. During that conversation, McCarty stated that he was ready to go target shooting at any time because his gun was always in his car.

Later that day, Nowicki checked McCarty's background and discovered that McCarty was a convicted felon. At about 6:00 p.m., Nowicki relayed the information he had about McCarty, including McCarty's address, to Milwaukee police officers Pamela Dries and George Bower. At around 8:00 p.m., Nowicki received a phone call from the confidential informant. The informant told Nowicki that McCarty was driving a beige compact automobile with Michigan license plates bearing the insignia BUG or BUL 278. When Nowicki relayed this information to Dries and Bower, they told Nowicki that they had driven by McCarty's house earlier that evening and had noticed a tan Chrysler with Michigan license plates bearing the insignia 278 RUL parked nearby. Nowicki relayed this information to two officers who worked the 7:00 p.m. to 3:00 a.m. shift, Heidi Panasiuk and Gary Zielinski. Nowicki also told Panasiuk and Zielinski that McCarty was a convicted felon who possibly had a handgun with him.

About forty minutes later, while on routine patrol, Panasiuk and Zielinski saw a tan Chrysler Aries with Michigan license plates 278 RUL. Zielinski and Panasiuk followed the car. With the officers follow-

---

firearms by unqualified people. Those offenses had formerly been scattered among 18 U.S.C. §§ 922(g) and (h) and 18 U.S.C. app. § 1202. *See* H.R.Rep. No. 99-495, at 23, *reprinted in* 1986 U.S.Code Cong. & Ad.News 1327, 1349.

**2.** One might argue that the language "had previously traveled in interstate commerce" provides a more detailed description of the required interstate commerce nexus than does the language "in or affecting commerce." We do not believe, however, that either phrase is more or less useful than the other in helping a defendant prepare his defense.

ing, the tan Aries cut sharply across several traffic lanes without using a directional signal. The Aries then made another left turn and pulled into an alley. Zielinski thought that the Aries' driver was trying to evade him and Panasiuk, so the officers activated their red light and siren. The Aries then pulled into a private driveway; before the Aries stopped, however, Panasiuk saw the driver lean toward the right, as if to hide something under the passenger seat.

Zielinski and Panasiuk, concerned for their safety because they had been told that McCarty had a gun, approached the Aries with their guns drawn. Zielinski ordered McCarty and his passenger (who turned out to be McCarty's wife) out of the car. While glancing into the car, both Zielinski and Panasiuk noticed a gym bag on the passenger-side floor. Lying atop the contents of the open gym bag was a .44 magnum Smith and Wesson handgun.

■ McCarty argues that the district court should have suppressed the evidence found in his car because Zielinski and Panasiuk had no legal basis for stopping or searching his car. The district court held that Zielinski and Panasiuk had probable cause to believe that McCarty was a convicted felon who possessed a firearm. We agree.

Probable cause is a practical, not a technical, concept and deals with probabilities, not certainties. " 'In dealing with probable cause ... we deal with ... the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Illinois v. Gates,* 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983) (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)). Police have probable cause to arrest a suspect where " 'the facts and circumstances within their knowledge and of which they [have] reasonable trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense.' " *United States v. Lima,* 819 F.2d 687, 688 (7th Cir.1987) (citations omitted); *see also Gates,* 462 U.S. at 230–31, 103 S.Ct. at 2328

(reiterating the traditional totality of the circumstances approach to probable cause).

We have no trouble concluding, as did the magistrate and the district court judge, that Zielinski and Panasiuk had probable cause to stop McCarty and arrest him. Based on their conversations with Nowicki, Zielinski and Panasiuk knew, even before spotting McCarty's car, that McCarty was a convicted felon, that he was driving a tan compact car with Michigan license plates bearing the number 278, and that he was likely to be carrying a gun in his car. The fact that McCarty tried to evade Zielinski and Panasiuk while they were following him, and his furtive gesture when he was stopped, reinforced the reasonableness of the officers' belief that McCarty had committed or was committing a crime.

McCarty argues that Nowicki (and therefore Zielinski and Panasiuk) had no reliable information indicating that he carried a gun. According to McCarty, Nowicki could not rely on either Santiago's or the confidential informant's information because Nowicki did not know how they had gained their information. This argument has several flaws. First, Santiago told Nowicki that McCarty himself had said he had a gun. More important, McCarty ignores the fact that almost all the information that Nowicki received from Santiago and the informant about McCarty was either cross-corroborative, corroborated by Nowicki's own observation and investigation, or both. Santiago and the informant each gave Nowicki matching descriptions of McCarty; Nowicki's own observation confirmed that description. The informant told Nowicki that McCarty was a convicted felon; Nowicki's investigation confirmed that fact. Santiago and the informant both told Nowicki that McCarty had a gun; Nowicki himself heard McCarty say that he always kept a gun in his car. The informant told Nowicki that McCarty was driving a beige car with Michigan license plates bearing certain letters and numbers; Officers Dries and Bower told Nowicki that they had seen a tan car with similar Michigan license plates parked near McCarty's house. Given this corroboration, it is specious to suggest that Nowicki lacked information sufficient to lead a prudent person to believe

148

that McCarty was a convicted felon who had a gun. *Cf. Gates,* 462 U.S. at 241–45, 103 S.Ct. at 2333–36 (emphasizing the importance of corroboration in determining whether information provides probable cause).

McCarty also contends that Zielinski and Panasiuk did not stop him because they had probable cause to believe he was an armed felon, but instead used his minor traffic violation as a pretext to stop him so they could search his car. One problem with this contention is that the district court found that the arresting officers did not stop McCarty because of his traffic violation, so there was no pretext. This was a question of fact, and the district court's finding was not clearly erroneous. *See Lima,* 819 F.2d at 688 (court of appeals reviews a district court's factual findings on a motion to suppress under the clearly erroneous standard). A more fundamental problem with McCarty's contention is that Fourth Amendment analysis is objective, not subjective; therefore, Zielinski's and Panasiuk's subjective reasons for stopping McCarty are irrelevant as long as the facts that they knew gave them probable cause to stop McCarty. *See Scott v. United States,* 436 U.S. 128, 137–38, 98 S.Ct. 1717, 1723–24, 56 L.Ed.2d 168 (1978); *United States v. D'Antoni,* 856 F.2d 975, 979 (7th Cir.1988); *cf. Lester v. Chicago,* 830 F.2d 706, 712 (7th Cir.1987).[3] Zielinski and Panasiuk had probable cause to stop McCarty, so the stop did not violate McCarty's Fourth Amendment rights.

Having concluded that Zielinski and Panasiuk properly stopped McCarty, we also conclude that they properly seized the gun from his car. Since Zielinski and Panasiuk had probable cause to believe that McCarty was carrying a handgun in the car, they could properly search the car and any con-

tainer in the car (including the gym bag) within which the gun might have been located. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Furthermore, Zielinski and Panasiuk could properly search the car's interior passenger area, and the gym bag, incident to arresting McCarty. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (search incident to arrest); *cf. Michigan v. Long,* 463 U.S. 1032, 1045–52, 103 S.Ct. 3469, 3479–82, 77 L.Ed.2d 1201 (1983) (*Terry* stop). We therefore need not reach McCarty's contention that the district court erred by finding that the gun was in plain view.

### III.

McCarty's indictment was not fatally insufficient. The search of his car and seizure of his gun were proper. Therefore, we affirm McCarty's conviction.

AFFIRMED.

---

**3.** A police officer's motive for arresting and subjective belief at the time of arrest that he lacks probable cause may be relevant in determining what facts the officer actually did know at the time of arrest, and may tip the scale toward finding that the officer lacked probable cause. *See Scott,* 436 U.S. at 139 n. 13, 98 S.Ct. at 1724 n. 13 ("as a practical matter the judge's assessment of the motives of the officers may occasionally influence his judgment regarding the credibility of the officers' claims with re-

spect to what information was or was not available to them at the time of the incident in question."); *United States v. Gray,* 659 F.2d 1296, 1301 n. 8 (5th Cir.1981) ("in a close case, the denial by those officials that probable cause existed may well tip the balance toward a finding of no probable cause."). But where, as here, the court finds that the officers knew facts sufficient to form probable cause, inquiring into the officers' "true" motives for arresting is irrelevant.