**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William HOPE, Defendant–Appellant.**

**No. 88–3134.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1989.

Decided June 27, 1990.

256

Thomas M. Durkin, Asst. U.S. Atty., Scott Levine, Office of the U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Gregory J. Schelsinger, Schlesinger & Krasny, Chicago, Ill., for defendant-appellant.

Before CUDAHY and FLAUM, Circuit Judges, and GRANT, Senior District Judge.[*]

## FACTS

GRANT, Senior District Judge.

At approximately 1:15 a.m. on September 3, 1987, Chicago Police Officers Duane Leonard, James Naughton and John Cotter stopped two vehicles within close proximity of one another for purported traffic violations. Officers Leonard, Naughton and Cotter and other officers who arrived at the scene were assigned to the Nineteenth District Tactical Unit which focused on gang activity and narcotics. They worked in unmarked cars and wore plain clothes.

Theresa Ramirez, the driver of the first car, was stopped by Officers Leonard and Naughton when she was observed running a stop sign. Police searched the interior of the car, found marijuana in the back seat and placed Ramirez under arrest. The trunk of the car was subsequently searched, although officers at the scene testified that nothing was found during that search.

[*] Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

The driver of the second car was William Hope. At the time, Hope was a leading member of the notorious Black Gangster Disciples gang in Chicago. Officers Leonard, Naughton and Cotter testified at trial that they recognized Hope as the driver of the second car, and that they knew, based on a check run a week or so earlier, that his driver's license had been suspended. Based upon that information, they stopped Hope's vehicle and asked if he could produce a valid driver's license, to which he responded "no". In a routine search of the interior of Hope's car, police reported that they found a bullet and battery casing on the floorboard; that the top of the battery casing came ajar; and, that they discovered a loaded .38 revolver inside the hollowed out interior.

Hope, a convicted felon, was placed under arrest and was subsequently indicted for unlawful possession of a firearm which had previously travelled in interstate commerce, in violation of 18 U.S.C. § 922(g)(1). A superseding indictment was returned on June 27, 1988 charging the same offense.

Hope went to trial on September 6, 1988. He called one witness in his defense, Theresa Ramirez, a friend and neighbor and the driver of the first vehicle stopped by the police on September 3, 1987. Contrary to her prior statements to police, Ramirez testified at trial that the battery casing and the gun were hers, and that they were in the trunk of her car when she was stopped by the police.

The jury returned a verdict of guilty on September 9, 1988. During the sentencing phase of the proceedings, the government sought sentence enhancement under 18 U.S.C. § 924(e) on the ground that Hope had been convicted of three prior felonies. Hope's attorney filed a "Motion to Prevent Government from Using Alleged Convictions ... to Enhance Sentencing," which the court denied. Finding the existence of the requisite three prior felonies, the district court sentenced Hope to thirty years without parole pursuant to 18 U.S.C. § 924(e). This appeal followed.

## ISSUES

Hope challenges his conviction on several grounds. He contends that police lacked probable cause to arrest him on September 3, 1987 and to make a search of his vehicle incident to that arrest; that the district court improperly admitted a stipulation showing that he had previously been convicted of deviate sexual assault, a felony, without a limiting instruction; and that the evidence admitted at the trial was insufficient, as a matter of law, to permit a rational trier of fact to find him guilty beyond a reasonable doubt. Hope also challenges the enhancement of his sentence under 18 U.S.C. § 924(e), and the effectiveness of his counsel both at trial and during sentencing.

## CONCLUSIONS

### I. *Probable Cause for Arrest*

Hope maintains that his arrest was pretextual and without cause, and that any search incident to that arrest was therefore improper. In support of his position, Hope argues in rather summary fashion that the arrest was predicated on stale information; that the arresting officers were part of a tactical unit "engaged in aggressive police work to combat gang activity [and] narcotics ..." whose responsibilities would not normally have included traffic patrol; and that they were obviously motivated by an improper purpose "to use a traffic arrest as a pretext for searching [his person] and his vehicle to potentially secure incriminating evidence against him" because he was a gang member.

In response, the government contends that Hope waived any pretextual arrest argument by failing to raise it at trial. Even if the issue had been properly raised, the government maintains that the arresting officers possessed sufficient information to give them probable cause to arrest, namely the fact that Hope's driver's license had been suspended, and that the search of his car, including any containers within the passenger area, was proper.

Although Hope urges us to adopt a subjective or "usual police practices" test in determining whether his arrest was pre-

textual, we note that the test in this circuit has been, and remains, purely an objective one. *United States v. Trigg,* 878 F.2d 1037, 1040 (7th Cir.1989); *United States v. Kordosky,* 878 F.2d 991, 992 (7th Cir.1989); *United States v. McCarty,* 862 F.2d 143, 148 (7th Cir.1988). "Under the objective test, the search incident to the arrest is legal so long as the arresting officer possesses sufficient information to give him probable cause to arrest," *Kordosky,* 878 F.2d at 993, and is authorized by law to effect a custodial arrest for the particular offense. *Trigg,* 878 F.2d at 1041 (refusing to follow "usual police practice" approach). Probable cause to arrest exists where "the facts and circumstances within [the arresting officers'] knowledge and of which they [have] reasonable trustworthy information [are] sufficient to warrant a prudent [person] in believing that a [suspect] had committed or was committing an offense." *McCarty,* 862 F.2d at 147 (quoting *United States v. Lima,* 819 F.2d 687, 688 (7th Cir.1987)). The officer's subjective reasons, or "motive", for stopping the defendant are relevant, if at all, only in establishing what facts the officer actually had knowledge of at the time of the arrest. *Kordosky,* 878 F.2d at 993; *McCarty,* 862 F.2d at 148 and n. 3.

█ In the present case, the arresting officers testified that a computer check had been run on Hope a week or so before his arrest which revealed that Hope's driver's license had been suspended. When asked whether he could produce a valid license, Hope responded that he could not. Contrary to Hope's contention, we find that the information upon which the officers relied was not "stale." Our decision in *United States v. Longmire,* 761 F.2d 411, 420 (7th Cir.1985), does not suggest otherwise. While the officers may have been assigned to a tactical unit involved in gang activity, there is nothing in the record to indicate that they were not authorized to effect a custodial arrest for a traffic violation. The officers had sufficient information to warrant the belief that Hope was operating a vehicle without a valid driver's license in violation of state law, and thus had probable cause to arrest Hope on September 3,

1987. Their actual motive in stopping Hope was therefore irrelevant. *Kordosky,* 878 F.2d at 993; *McCarty,* 862 F.2d at 148 and n. 3. Under the circumstances the search of the passenger compartment of Hope's car, including any containers within the passenger area, was proper. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *United States v. Karlin,* 852 F.2d 968, 970 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989).

## II. *Sufficiency of the Evidence*

Hope maintains generally that the testimony of the three arresting officers (Cotter, Leonard and Naughton) was "conflicting [and] inherently implausible," and that Ramirez's testimony to the effect that the gun and battery casing were hers was "not materially contradicted or impeached." He concludes therefore that the evidence was insufficient to support a finding of guilt beyond a reasonable doubt. We do not agree.

█ It is our job on appeal to determine whether any rational trier of fact could have concluded given the evidence presented at trial that Hope was guilty of the crime charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Muehlbauer,* 892 F.2d 664, 666 (7th Cir.1990). In making that determination, we look at the evidence in a light most favorable to the government. *Muehlbauer,* 892 F.2d at 666–67. To prove a violation of 18 U.S.C. § 922(g), the government must have shown: (1) that Hope possessed a firearm; (2) that the firearm moved in or affected interstate commerce; and (3) that Hope had a prior felony conviction. *United States v. King,* 897 F.2d 911, 913 n. 1 (7th Cir.1990). Our review of the record shows that the government did, in fact, meet its burden of proof, and that there was sufficient evidence to convict.

To the extent Hope contends that the police officers' testimony was conflicting, we find the conflicts generally immaterial,

and note that "questions of credibility and the weight to be afforded conflicting evidence are for the jury to resolve and their conclusions on such matters are accorded tremendous deference." *United States v. Jones,* 808 F.2d 561, 569 (7th Cir.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1630, 95 L.Ed.2d 203 (1987). We would also note that, contrary to Hope's contentions, Ms. Ramirez's testimony that the gun was actually in her possession was directly contradicted by the testimony of officers at the scene, and by her own previous statements.

### III. *Admissibility of Stipulation*

■ It is undisputed that Hope stipulated to a material element of the offense charged, namely the existence of a prior felony. In Hope's case, the stipulation that he signed identified the nature of the prior felony as deviate sexual assault. This stipulation was admitted into evidence without objection, and without a request for a limiting instruction.

On appeal, Hope suggests that the stipulation was unnecessarily specific and unduly prejudicial, and that at a minimum it should have been accompanied by a limiting instruction. He contends that it was reversible error for the court not to instruct the jury *sua sponte* that the prior conviction could not be considered as evidence of a propensity to commit the crime charged.

The government contends that Hope waived any challenge to the admission of the stipulation by failing to raise the issue at trial. We agree.

Even if we were to consider Hope's belated objections, our review would be limited by the strict standards of the plain error doctrine of Fed.R.Crim.P. 52(a). *United States v. Wynn,* 845 F.2d 1439, 1442 (7th Cir.1988); *United States v. Silverstein,* 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). To establish plain error, Hope would have had to show that, but for the erroneously admitted evidence, he probably would have been acquitted. *Wynn,* 845 F.2d at 1443; *United States v. Whaley,* 830 F.2d 1469, 1476 (7th Cir.1987),

*cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988). He has failed to do so.

We have stressed in the past, and reiterate here, that "evidence should not make the jury cognizant of any prior convictions beyond those necessary as an element of the offense." *King,* 897 F.2d at 913 (citing *United States v. Pirovolos,* 844 F.2d 415, 420 (7th Cir.), *cert. denied,* 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988)). To prove a violation of 18 U.S.C. § 922(g), however, the government must show that Hope had a prior felony conviction. *King,* 897 F.2d at 913 n. 1. The government met its burden with respect to that element when it submitted proof in the form of a signed stipulation showing that Hope had previously been convicted of deviate sexual assault. The government did not attempt to introduce evidence of any other convictions beyond the one necessary as an element of the offense charged. Neither did it improperly suggest to the jury that Hope's prior conviction demonstrated a propensity to commit the offense charged.

While the nature of Hope's prior conviction may have been prejudicial, it did not involve the use of a weapon, and, in our opinion, "added very little to the case" against him. *Pirovolos,* 844 F.2d at 421. *See also King,* 897 F.2d at 914 ("Evidence of prior felony convictions for crimes involving use of a weapon tends to be more prejudicial to a jury deciding the guilt or innocence of a person accused of a weapons offense than evidence of crimes not involving use of a weapon."). Even if we were to exclude any reference to the specific nature of Hope's prior felony conviction, we find that there was substantial evidence from which the jury could have reasonably concluded beyond a reasonable doubt that Hope was guilty of the offense charged, specifically, the testimony of the officers at the scene.

■ The error, if any, came in the district court's failure to offer a limiting instruction at trial. Under the circumstances, however, the absence of an instruction does not constitute plain error. We believe that a limiting instruction could have been

given which "emphasized the jury's duty to convict [Hope] only by the evidence of possession presented by the government, and without considering his prior conviction[ ] as evidence of his propensity to" commit the crime with which he was charged. *King*, 897 F.2d at 915. The government, however, never argued, or otherwise suggested, that the jury should use the prior conviction as evidence of a propensity to commit the offense charged. Neither is there any indication that the government expounded upon the specifics of Hope's prior conviction. Given these factors, and the substantial nature of the other evidence against Hope, any error in failing to give a limiting instruction was harmless, *King*, 897 F.2d at 915, and falls far short of the plain error required under Fed.R.Crim.P. 52(a).

## IV. *Sentence Enhancement*

Hope challenges the enhancement of his sentence under 18 U.S.C. § 924(e) on several grounds. He contends that (1) one of the three felonies, a 1975 burglary of a commercial building, used by the government as a basis for enhancing his sentence never culminated in a "conviction"; (2) a commercial burglary should not be a sentence enhancing offense under 18 U.S.C. § 924(e); and (3) the district court's failure to determine whether the proceedings in 1975 actually culminated in a conviction contravened due process of law.

Section 924(e) provides in pertinent part:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sen-

tence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

### A. The Dangerous Drug Abuse Act

Of the three prior felony convictions introduced in evidence, Hope challenges only one on appeal, a 1975 conviction in the State of Illinois for burglary. The government introduced evidence in the form of a "Certified Statement of Conviction" in which the Clerk of the Cook County Circuit Court certified that on November 21, 1975 Hope withdrew his original plea of not guilty to the offense charged and entered a plea of guilty and that on that same date "judgment was entered on the conviction and the defendant was sentenced ... to Illinois Department of Corrections for a term of not less than three (3) years, nor more than nine (9) years. Defendant sentenced to the Drug Abuse Program thru Gateway House."

Hope maintains for the first time on appeal that, contrary to the Clerk's Certified Statement of Conviction, the court proceeding on November 21, 1975 never culminated in a conviction under Illinois law. He bases his argument on two separate, yet related, theories, contending that the sole purpose of Illinois' Dangerous Drug Abuse Act was to provide rehabilitative treatment to drug addicts in lieu of prosecution, *People v. Warren*, 69 Ill.2d 620, 14 Ill.Dec. 879, 881, 373 N.E.2d 10, 12 (1977), and that the transcript of the hearing on November 21 actually evidences the state court's intention to offer Hope a rehabilitative treatment program as an alternative to prosecution. Hope submits the transcript of that hearing and the Memorandum of Orders entered by the state court in support of his contention, and renews his motion to supplement the record or alternatively to have this court take judicial notice of that proceeding.[1]

---

1. While it is true that Fed.R.App.P. 10(a) does not contemplate the supplementing of the appellate record with evidence not presented to the district court, and that we generally will not

consider facts which were not made a part of the record at the district court level, *Colonial Penn Insurance Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir.1989); *Green v. Warden, U.S. Penitentia-*

The Illinois Dangerous Drug Abuse Act, Ill.Rev.Stat., ch. 91½, § 120.8 (1973), provided:

> An addict charged with or convicted of a crime is eligible to elect treatment under the supervision of the Department instead of prosecution *or* probation, as the case may be, unless * * * (e) the addict is on probation or parole and the appropriate parole or probation authority does not consent to that election * * *.[2]

(Emphasis added). *Warren,* 14 Ill.Dec. at 880, 373 N.E.2d at 11; *People v. Phillips,* 66 Ill.2d 412, 6 Ill.Dec. 215, 216, 362 N.E.2d 1037, 1038 (Ill.1977). While it is undisputed that one of the purposes of the Act was to create an alternative to criminal prosecution, *Warren,* 14 Ill.Dec. at 881, 373 N.E.2d at 12, the language of section 120.8 makes it clear that was not the only purpose. The provisions of the Dangerous Drug Abuse Act provided both an alternative to prosecution, in which case proceedings would be stayed subject to dismissal pending the satisfactory completion of treatment, *see Phillips,* 6 Ill.Dec. at 216, 362 N.E.2d at 1038; *Warren,* 14 Ill.Dec. at 880–81, 373 N.E.2d at 11–12, *and* a sentencing alternative once criminal proceedings had culminated in a conviction. *See People v. Dill,* 23 Ill. App.3d 503, 319 N.E.2d 240, 243 (1974); *People v. Smith,* 23 Ill.App.3d 387, 319 N.E.2d 238, 240 (1974).

To the extent Hope maintains that the proceeding which took place in the Cook County Circuit Court on November 21, 1975 did not culminate in a conviction under Illinois law, we again must disagree.[3] Illinois law defines "conviction" as:

> a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury.

Ill.Rev.Stat., ch. 38, para. 2–5 (1962); Ill. Rev.Stat., ch. 38, para. 1005–1–5 (1973). While Hope argues that the proceedings on November 21, 1975 did not culminate in a "judgment of conviction" or "finding of guilty", he ignores the disjunctive language of the statute which states that " 'conviction' means a judgment of conviction *or* sentence entered upon a plea of guilty...." As the Illinois Court of Appeals noted in *People v. Pruitt,* 45 Ill. App.3d 399, 4 Ill.Dec. 99, 359 N.E.2d 1051 (Ill.App.1977), "The word 'or' in the statute must be accorded significance; whenever this disjunctive is used, the members of the sentence it connects are to be taken separately." *Pruitt,* 4 Ill.Dec. at 100, 359 N.E.2d at 1052 (quoting *People v. Johnson,* 34 Ill.App.3d 38, 339 N.E.2d 325, 327 (1975)).

It is clear from the Clerk's Certified Statement of Conviction that on November

---

*ry,* 699 F.2d 364, 369 (7th Cir.), *cert. denied,* 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983), we have the power to take judicial notice of "proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue." *Green,* 699 F.2d at 369. This is true even though those proceedings were not made a part of the record before the district court. *Colonial Penn Insurance,* 887 F.2d at 1239; *E.I. DuPont de Nemours & Co., Inc. v. Cullen,* 791 F.2d 5, 7 (1st Cir.1986); *Coney v. Smith,* 738 F.2d 1199, 1200 (11th Cir.1984).

We find that the state court proceedings on November 21, 1975 are, in fact, relevant to matters at issue in this case, and, in the interest of justice, grant Hope's motion to take judicial notice of those proceedings and the Memorandum of Orders relating thereto. We find, however, in reviewing the transcript and the Memorandum of Orders, that the Clerk's Certified Statement of Conviction accurately reflects

what transpired on November 21, 1975. These documents show (1) that Hope withdrew his plea of not guilty on November 21, 1975 and entered a plea of guilty to the offense charged (burglary of a commercial building); (2) that his petition to be treated as a drug addict under the Dangerous Drug Abuse Act was made after, or in conjunction with, his plea of guilty; and, (3) that Hope was sentenced to a rehabilitative treatment program, with the admonishment that, should he fail to complete that program, a three-to-nine year term of imprisonment would be imposed.

**2.** The Illinois Dangerous Drug Abuse Act was systematically repealed from 1974–1984.

**3.** Hope correctly notes that, in determining what constitutes a conviction for purposes of § 924(e), we must look to the law of the state in which the proceedings were held. 18 U.S.C. § 921(a)(2).

21, 1975 Hope withdrew his plea of not guilty to the charge of burglary, and entered a plea of guilty; that the court *sentenced* him to the Drug Abuse Program through Gateway House in lieu of a three-to-nine year term of imprisonment, thus electing a rehabilitative rather than criminal sanction.[4]

## B. Nature of Offense

 Hope contends that, even if this court should find that he was actually convicted of the 1975 burglary, the nature of the offense, a commercial burglary, should not serve as an enhancement offense under 18 U.S.C. § .924(e). Hope acknowledges that there is Seventh Circuit authority which holds that any burglary is an offense which is within the scope of § 924(e), *United States v. Dickerson*, 857 F.2d 414, 419 (7th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1753, 104 L.Ed.2d 189 (1989), but suggests that it was inappropriate, given

the nature of Hope's conviction, to use a conviction for commercial burglary as a basis for enhancing his sentence. *United States v. Chatman*, 869 F.2d 525, 529 (9th Cir.1989); *United States v. Headspeth*, 852 F.2d 753, 758 (4th Cir.1988).

We find Hope's argument unpersuasive in light of our more recent decision in *United States v. Dombrowski*, 877 F.2d 520 (7th Cir.1989), in which we found that the term "burglary" in § 924(e)(2)(B) was intended by the legislature to encompass "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." *Dombrowski*, 877 F.2d at 530. We conclude, as we did in *Dombrowski*, that the commercial burglary of which Hope was convicted in 1975 qualifies as a sentence-enhancing offense under § 924(e). *See Dombrowski*, 877 F.2d at 530–531 and n. 12.[5]

---

4. At the time of the 1975 offense, Hope was on parole from a prior burglary conviction in 1971. Under section 120.8(e) of the Dangerous Drug Abuse Act, Ill.Rev.Stat.1973, ch. 91½, par. 120.-8(e), Hope's parole officer was required to consent to the drug treatment program before the court could allow Hope to elect that program over incarceration. The parole officer's consent was never obtained, and Hope was accordingly ineligible to elect treatment under the Act as an alternative to either prosecution or a criminal sentence. It appears, however, that Hope's prior release status was unknown to the court on November 21, 1975.

5. The recent decision in *Taylor v. United States*, — U.S. —, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), does not dictate a contrary conclusion. Adopting a "generic" definition of "burglary", the Supreme Court in *Taylor* held that "a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." — U.S. at —, 110 S.Ct. at 2158. At the time of Hope's arrest and conviction in 1975, the Illinois burglary statute provided that:

> (a) A person commits burglary when without authority he knowingly enters or without authority remains within a building, house-trailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft. . . .

Ill.Rev.Stat., ch. 38, para. 19–1 (1961) (as amended by P.A. 77–906, effective August 17, 1971). Although the Illinois statute defines burglary to include places such as motor vehicles, and is therefore broader than the "generic" burglary defined in *Taylor*, the government is not necessarily precluded from using a conviction under § 19–1 for sentence-enhancement purposes. *Id.* — U.S. at — - —, 110 S.Ct. at 2158–61. Illinois' burglary statute includes within its definition of burglary the unlawful entry into a building with the intent to commit a crime, and to that extent comports with the "generic" definition of burglary adopted in *Taylor*. *Id.* — U.S. at — - —, 110 S.Ct. at 2156–60. It is that provision of the statute with which Hope was apparently charged in 1975. *The record shows that Hope was charged with a burglary which involved the unlawful entry into a building, namely a Chevrolet dealership, with the intent to commit theft, and that he pled guilty to that offense. See n. 1 infra.* That the building was used for commercial purposes is of no consequence. See *Taylor*, — U.S. at —, 110 S.Ct. at 2157–58 ("Congress presumably realized that the word 'burglary' is commonly understood to include not only aggravated burglaries, but also run-of-the-mill burglaries involving an unarmed offender, an unoccupied building, and no use or threat of force."); *Dombrowski*, 877 F.2d at 530. The offense with which Hope was charged and convicted in 1975 thus satisfied the elements of a generic burglary and was properly used as a predicate to sentence-enhancement under 18 U.S.C. § 924(e). See *Taylor*, — U.S. at — - —, 110 S.Ct. at 2158–61.

## C. Due Process

Hope makes a cursory argument that his sentencing contravened due process of law, based on the district court's purported failure to determine whether the proceedings in 1975 actually culminated in a conviction. The government maintains that the district court did, in fact, make an oral finding at the close of the evidence in the sentencing proceeding that "... the defendant was indeed convicted on at least three felonies involving violence ...", and that the foundation for the enhanced sentence was properly made.

Prior to his sentencing hearing in the present case, Hope filed a Motion to Prevent Government from Using Alleged Prior Convictions To Enhance Sentencing. Hope contended that his three prior convictions could not be used as a predicate to sentence enhancement under 18 U.S.C. § 924(e) because (1) his conviction for deviate sexual assault was not a felony involving violence; (2) the 1970 and 1975 convictions for burglary of a commercial building did not involve the use of a weapon and were therefore not felonies involving violence; and (3) the sentence on the 1975 burglary was in violation of Hope's constitutional guarantees of due process, effective assistance of counsel and involuntary self-incrimination. The district court summarily denied the defendant's motion.

 It is undisputed that the government has an affirmative duty to prove the absence of a constitutional defect in a prior conviction which it intends to use as a predicate to sentence enhancement once a constitutional challenge has been raised. *Crovedi v. United States*, 517 F.2d 541, 543 (7th Cir.1975). The constitutional challenges which Hope raised at the trial level, however, were conclusory in nature and lacked both a factual and legal basis. Hope presented no evidence whatsoever to suggest that his plea of guilty in 1975 was not knowingly and voluntarily made, that his attorney at the time rendered constitutionally ineffective assistance, or that he was otherwise denied "due process." Neither did he demonstrate a factual or legal basis for the proposition that deviate sexual assault and commercial burglary are not violent felonies within the meaning of § 924(e). Under the circumstances, we find that neither the government nor the court was under a duty to make further inquiry into the constitutional validity of Hope's prior convictions. We, accordingly, reject Hope's argument that his sentencing contravened due process of law.

## V. *Ineffective Assistance of Counsel*

Hope contends, in his final argument, that his privately retained counsel rendered constitutionally ineffective assistance during his trial and at his sentencing hearing. He claims that his representation at trial was ineffective because his attorney agreed to stipulate that he had previously been convicted of deviate sexual assault. Hope also criticizes his attorney for failing to request a cautionary instruction explaining the limited purpose for which evidence of the defendant's prior conviction was received. Hope alleges that his representation at sentencing was ineffective because counsel proceeded to sentencing without providing the court with the transcript of the prior sentencing hearing on November 21, 1975.

 The defendant bears a heavy burden in establishing an ineffective assistance claim. *United States v. Moya–Gomez*, 860 F.2d 706, 763 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *United States v. Grizales*, 859 F.2d 442, 447 (7th Cir.1988). To overcome the strong presumption that counsel rendered reasonably effective assistance, Hope must show that his trial counsel's performance fell below an objective standard of reasonableness, and that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Snyder*, 872 F.2d 1351, 1358 (7th Cir.1989) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. With this

standard in mind, we review the totality of the circumstances to determine whether counsel rendered constitutionally ineffective assistance. *United States v. Zylstra,* 713 F.2d 1332, 1338 (7th Cir.), *cert. denied,* 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983). Based on our previous findings, however, we can reach but one conclusion, that Hope has failed to support his claim of ineffective assistance of counsel.

■ One of the elements of the offense with which Hope was charged required the government to show that Hope had a prior felony conviction. 18 U.S.C. § 922(g)(1); *King,* 897 F.2d at 913 n. 1. The danger inherent in submitting evidence of a prior conviction to a jury is self-evident, for it is generally accepted that "a jury may be willing to convict a defendant based on the inference that he or she was acting in conformity with past misconduct rather than upon the government's proof beyond a reasonable doubt...." *United States v. Lowe,* 860 F.2d 1370, 1381–82 (7th Cir. 1988), *cert. denied,* — U.S. —, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989). The potential for prejudice, however, existed with or without the stipulation. As a matter of trial strategy, defense counsel had to choose between the lesser of two evils: stipulate to the prior conviction or allow the government to submit proof of that conviction. Under the circumstances, we fail to see how the decision to stipulate to the prior conviction rendered counsel's performance constitutionally ineffective.

■ We find but one incident which might suggest that counsel's performance may have fallen "outside the range of professionally competent assistance," *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066, that being his failure to request a limiting instruction with respect to the admissibility of the stipulation regarding Hope's prior conviction for deviate sexual assault. We have previously found that a limiting instruction would have been appropriate under the circumstances. Hope, however, must also show that there was a "reasonable probability that, but for counsel's unprofessional error[ ], the result of the proceedings would have been different." *Id.*

at 694, 104 S.Ct. at 2068. He has failed to do so. As we noted earlier, while undoubtedly prejudicial, the evidence of Hope's prior conviction was necessary to prove the crime charged, and otherwise added little to the case against him. The government did not expound upon the specifics of the crime, or suggest to the jury that Hope's prior conviction showed a propensity to commit the crime with which he was charged. *See King,* 897 F.2d at 914; *Pirovolos,* 844 F.2d at 421.

To the extent Hope alleges that his representation at sentencing was ineffective because counsel proceeded to sentencing without providing the court with the transcript of the prior sentencing hearing on November 21, 1975, we have previously concluded that the transcript of the state court proceeding on November 21, 1975 is not materially inconsistent with the Certified Statement of Conviction which was admitted at trial as evidence of a prior felony conviction.

## VI. *Summary*

For the foregoing reasons, we now AFFIRM Hope's conviction and the enhancement of his sentence under 18 U.S.C. § 924(e).