JOURNAL ENTRY and OPINION
{¶ 1} A jury found defendant Mack Baldwin guilty of five counts of felonious assault, with firearm specifications, and one count of having a weapon while under disability. The counts stemmed from an incident in which Baldwin fired a single gunshot into a car carrying five passengers. The primary issues on appeal concern the weight and sufficiency of the evidence, and sentencing. We originally granted Baldwin leave to file a pro se brief in addition to that filed by appointed counsel, but Baldwin's repeated inability to file a brief in conformance with the Rules of Appellate Procedure led us to strike it.
 I {¶ 2} Baldwin first argues that the court lacked sufficient evidence to find him guilty of felonious assault. He maintains the evidence did not show that he possessed the requisite intent to fire his gun at the car, and that the gun discharged because of an outside agency.
 A {¶ 3} When reviewing a challenge to the sufficiency of the evidence, we must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 4} R.C. 2903.11(A)(2) states that no person shall knowingly "cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." The term "knowingly" is defined in R.C. 2901.22(B) as regardless of purpose, acting when the person "is aware that his conduct will probably cause a certain result or will probably be of a certain nature."
 {¶ 5} The evidence, viewed in a light most favorable to the state, showed that Baldwin and a friend named Tyrone Wagner drove to the home of Wagner's former girlfriend. Wagner drove the vehicle; Baldwin sat in the passenger seat. The former girlfriend came out and she and Wagner began arguing. Neither man left the vehicle during the argument. When the argument ended, the former girlfriend went back into the house. Shortly thereafter, she and four others exited the house, entered into a car and drove away. A man named Jeffrey Brock drove. Wagner and Baldwin followed in their car. When the parties reached a stop light, Wagner pulled alongside the car, with Baldwin immediately next to Brock. As Wagner exchanged more words with his former girlfriend, witnesses saw Baldwin hang out the passenger window with a gun in his hand Brock immediately pulled away, with Wagner in hot pursuit. Fearing the worst as Baldwin continued to hang outside the passenger window with his gun, Brock bumped Wagner's car. The gun discharged, but did not strike anyone. Wagner lost control of his car and Brock's car managed to get away.
 {¶ 6} Baldwin maintains that only three of the five victims testified in this case, so the court could only sustain convictions as to those three victims. This statement is plainly wrong. Unless there is some subjective element of proof (for example, the offense of aggravated menacing where the victim's subjective belief that the offender will cause imminent harm is an essential element of the offense), there is no requirement that all individual victims have to testify in order to sustain separate counts of the indictment. Were Baldwin correct in his argument, there would never be any murder convictions. The three victims who did testify all agreed that there were five passengers in the vehicle at the time of the shooting. A reasonable trier of fact could have found this evidence sufficient to establish that there were five persons in the car.
 B {¶ 7} Baldwin's primary argument under this assignment is that the evidence failed to prove that he knowingly fired the gun into the car. He maintains that his gun discharged because Brock struck the Wagner car; therefore, the state did not establish evidence that he acted knowingly.
 {¶ 8} We find that a reasonable trier of fact could have found that Baldwin acted knowingly in discharging his gun. The evidence showed that as the two cars sped through the streets, Brock saw Baldwin with a gun pointed at him and thought that the only way to avoid being shot was to bump Wagner's car. Brock testified, "it's like I was driving, he came up on the side of me, he was going to shoot me in my head if I would not have smacked him." There was other testimony that created the fair inference that but for Brock jolting Wagner's car, Baldwin would have fired the gun at Brock's head. Brock stated that he heard the gun, and in response to a question whether Baldwin had the gun aimed at Brock's head, Brock replied, "he had it aimed at my head after I hit the car, you know what I'm saying? The gun went down like that (indicating)." When the state asked if "it went into your car instead of your head?", Brock replied "yes."
 {¶ 9} The state also presented the testimony of a witness who said that Baldwin called her the night of the offenses and told her that "him and T-y [Tyrone Wagner] got into it with some niggas. * * * He was shootin' at them."
 {¶ 10} A reasonable trier of fact could have found this evidence established that Baldwin had every intention to shoot Brock in the head, and that rather than discharging the gun, the jolt to Wagner's car simply disrupted Baldwin's aim. Consequently, the state presented sufficient evidence to establish that Baldwin acted with the requisite intent to commit felonious assault.
 C {¶ 11} Finally, Baldwin argues that the act of firing one bullet into a car with five passengers is insufficient to establish five separate counts of felonious assault.
 {¶ 12} In State v. Jones (1985), 18 Ohio St.3d 116, 118, the Ohio Supreme Court stated the proposition that "when an offense is defined in terms of conduct towards another, then there is a dissimilar import for each person affected by the conduct." State v. Phillips (1991), 75 Ohio App.3d 785, 789, construed the Jones holding in light of facts similar to those presented in this case. Phillips had been convicted on five counts of felonious assault for injuring multiple victims in a drive-by shooting. On appeal, the court of appeals rejected his argument that the crimes were allied offenses of similar import. The court of appeals explained that because R.C. 2903.11(A)(2) defines felonious assault "in terms of the harm, or potential harm, visited upon `another,'" there exists "a separate, and `dissimilar,' import with respect to each person subject to that harm or risk of harm." Id. at 790. Hence, Phillips' felonious assault offenses were offenses of dissimilar import. Id. at 791.
 {¶ 13} As in the Phillips case, we apply the specific definition of felonious assault as being directed to "another," thus potentially encompassing all the passengers in the car. And we can assume that one who fires a gun into a moving car filled with passengers knows that there is a "significant possibility" that more than one person could have suffered physical harm as a result of his conduct. Even had Baldwin only intended to shoot the driver of the vehicle, he surely knew that killing the driver of a car moving at high speeds (between 50 and 60 miles per hour) would have resulted in physical harm to the remaining occupants of the vehicle. The first assignment of error is overruled.
 II {¶ 14} In his second assignment of error, Baldwin complains that the jury's verdict is against the manifest weight of the evidence.
 {¶ 15} A claim that a verdict is against the manifest weight of the evidence requires us to weigh the evidence and determine whether the jury lost its way and thereby created a manifest miscarriage of justice requiring reversal and a new trial. Statev. Thompkins (1997), 78 Ohio St.3d 380, 1997-Ohio-52. Having made that review, we find no basis for concluding that a manifest miscarriage of justice occurred in this case. While Baldwin denied that he ever possessed a gun, three witnesses testified to seeing the gun and hearing it fired at their car. And as we previously noted, there was evidence that Baldwin later told someone that he and Wagner had a run-in with some people and that "he was shootin' at them." Based on this testimony, the verdict was not against the manifest weight of the evidence.
 III {¶ 16} Baldwin next argues that the five counts of felonious assault were allied offenses of similar import and he could only be convicted of and sentenced to one count of felonious assault. As we explained in our discussion of the first assignment of error, the court did not err by entering separate guilty verdicts on all five felonious assault counts. Because Baldwin's argument relates solely to him being convicted on five separate counts of felonious assault, see Appellant's Brief at 16 ("the trial court erred in convicting Baldwin on five separate counts of felonious assault") we are not asked to make any corrections in his sentence. Counsel likely did not find it necessary to do so since the court sentenced all five felonious assault counts to be served concurrently; hence, any error in sentencing would have been of no moment to Baldwin.
 IV {¶ 17} The state presented the testimony of Joyce Swann, the mother of Baldwin's child, to show that he spoke with her the night of the offenses and admitted to "shootin'" at the victims. Baldwin argues that at the time of trial, he was under indictment in Common Pleas Case No. 434310, being accused of raping Swann. He complains that counsel performed ineffectively by failing to object to her testimony and failing to raise the rape case on cross-examination as a matter going to credibility.
 {¶ 18} To establish ineffective assistance of counsel, Baldwin must demonstrate that counsel's performance fell below the objective standard of reasonable competence, and that there is a reasonable probability that, but for such deficiency, the outcome of the trial would have been different. State v.Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus. When considering whether counsel's performance fell below the objective standard of reasonableness, we recognize that counsel is given leeway to make strategic decisions about how to defend a client. Sometimes, counsel's decisions on trial strategy take the form of choosing between the lesser of two evils. SeeUnited States v. Hope (C.A. 7, 1990), 906 F.2d 254, 264. When this kind of situation arises, the courts cannot engage in hindsight. As the United States Supreme Court stated inStrickland v. Washington (1984), 466 U.S. 668, 689, "it is all too tempting for a defendant to second-guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." We must seek to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.
 {¶ 19} Defense counsel could have questioned Swann about her bias as a witness in light of the pending rape charges against Baldwin, but that line of questioning would have informed the jury of the pending charge. The jury could easily have considered this as other acts evidence which made it more likely that Baldwin was a bad man with a propensity to commit crimes. The question before counsel was whether the risk of putting another charge before the jury outweighed the benefits, if any, of cross-examination going to bias. We think it doubtful that Baldwin would have benefitted much from questioning Swann on the rape charges. The three victims who testified did so consistently and convincingly, so Swann's cross-examination might not have countered that evidence. And there was no guarantee that cross-examination on Swann's potential bias would have yielded the kind of results that Baldwin believes would have occurred. Defense counsel had no way of knowing what Swann would have said, and her answers could have made a bad situation worse.
 {¶ 20} We do not mean to imply that defense counsel took the proper course of action by deciding not to cross-examine Swann about her pending rape charge against Baldwin. We merely recognize that counsel could rationally conclude under the circumstances that the inherent risks of voluntarily exposing the jury to other acts evidence did not outweigh the possible prejudice to the defense. Viewed in this light, we conclude that the defense did not fall below an objective standard of reasonableness.
 V {¶ 21} Although the court sentenced Baldwin to concurrent sentences on each of the five felonious assault counts, it ordered that the punishment in CR-436264 be served consecutive to the sentences imposed in CR-433163, CR-434310 and CR-436038-B. He argues that the court erred by ordering that the sentences in CR-436264 be served consecutive to the other cases because the court failed to make the necessary findings and failed to adequately state its reasons for imposing consecutive sentences.
 {¶ 22} In order to impose consecutive sentences, the court must make three findings: (1) consecutive sentences are necessary either to protect the public or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public, and (3) any of the following: (a) the offender committed the multiple offenses while awaiting trial or sentencing, (b) the harm caused by the multiple offenses was so great or unusual that no single term of imprisonment for offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct, or (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime. See R.C. 2929.14(E)(4) and 2929.19(B)(2)(c). The court must make a finding that gives its reasons for imposing consecutive sentences. See R.C. 2929.19(B)(2)(c); State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, paragraph one of the syllabus. Thus, "when imposing consecutive sentences, a trial court is required to make the statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing." Id. at ¶ 20.
 {¶ 23} The court made the following findings at sentencing:
 {¶ 24} "I find that consecutive sentences are necessary to protect the public from future crimes by you and I feel that it's necessary to punish you. These are very serious offenses. You're out of prison a short period of time and you collected quite an array of criminal offenses.
 {¶ 25} "I, also, find that consecutive sentences are not disproportionate to the seriousness of the conduct and are not disproportionate to the danger posed to the community. You shot a gun into a car full of people. It's only by the grace of God that they weren't — that they were not killed."
 {¶ 26} The court went on to note that Baldwin had sold drugs "by a school" and committed two counts of gross sexual imposition in another case. Thus, the court stated:
 {¶ 27} "You are a danger to the community, that is obvious from the nature and extent of your criminal activity.
 {¶ 28} "I also find that you committed these crimes while on post release control and that's a factor that indicates consecutive sentences are appropriate.
 {¶ 29} "I find that the harm caused was so great that no single prison term would adequately reflect the seriousness of the offense. There were five victims in the felonious assault, another victim in the gross sexual imposition, and we don't know how many victims there will be in selling drugs by a school.
 {¶ 30} "I, also, find that the history of your criminal conduct makes multiple terms necessary for the protection of the public from you, sir."
 {¶ 31} The court's statements at sentencing established that consecutive sentences were necessary to protect the public and to punish Baldwin, that consecutive sentences were not disproportionate to the seriousness of Baldwin's conduct and the danger that he posed to the public, and the harm caused by the multiple offenses was so great or unusual that no single term of imprisonment for offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct and that Baldwin's history of criminal conduct showed that consecutive sentences were necessary to protect the public from future crime. The court's reasons for making these findings were apparent on the record: Baldwin committed three separate crimes after being paroled from a ten-year sentence and he engaged in three completely different types of crimes (felonious assault, gross sexual imposition and drug trafficking) that showed him to be an wide-ranging offender. The court did not err by imposing consecutive sentences.
 {¶ 32} Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
 {¶ 33} A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McMonagle, J., concurs.
 Kilbane, J., concurs with separate concurring opinion.