**UNITED STATES OF AMERICA,
Plaintiff,**

v.

**Christopher R. MESSINO, Clement A. Messino, Michael Homerding, Donald Southern, William Underwood, Christopher B. Messino, Blaise Messino, Paul Messino, Thomas Hauck, Gray Chrystall, Daniel Shoemaker, and Lawrence Thomas, Defendants.**

**No. 93 CR 294.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 29, 1994.

**974**

L. Felipe Sanchez, Matthew Schneider, U.S. Attorney's Office, Chicago, IL, for plaintiff.

Marc William Martin, Genson, Steinback & Gillespie, Chicago, IL, for Christopher R. Messino.

Douglas P. Roller, Roller & Associates, Naperville, IL, for Clement A. Messino.

Linda Amdur, Chicago, IL, for Michael Homerding.

Robert A. Loeb, Chicago, IL, for Donald Southern.

Edward Marvin Genson, Genson, Steinback & Gillespie, Chicago, IL, for William Underwood.

Gerardo Solon Gutierrez, Chicago, IL, for Christopher B. Messino.

Robert Lee Gevirtz, Gevirtz, Born & Kissel, Northfield, IL, for Blaise Messino.

Joseph R. Lopez, Joseph R. Lopez, P.C., Chicago, IL, for Paul Messino.

Dennis P.W. Johnson, Walter Jones, Jr., Jorge V. Cazares, Pugh, Jones & Johnson, P.C., Chicago, IL, for Thomas Hauck.

Edna Selan Epstein, Law Offices of Edna Selan Epstein, Chicago, IL, for Gray Chrystall.

Leland Edward Shalgos, Chicago, IL, for Daniel Shoemaker.

Steven Allen Greenberg, Steve A. Greenberg, Ltd., Chicago, IL, for Lawrence Thomas.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

The government has submitted a pretrial written proffer of evidence pursuant to *United States v. Santiago*, 582 F.2d 1128 (7th Cir.1978), summarizing the evidence that the government expects to adduce at trial to establish that a conspiracy existed; that each of the defendants participated in the conspiracy; and that the coconspirator statements sought to be introduced were made during the course of and in furtherance of the conspiracy. The government seeks a ruling that proffered coconspirator statements are admissible against all defendants under Rule 801(d)(2)(E) of the Federal Rules of Evidence.

Statements made by a coconspirator of a defendant during the course of and in furtherance of the conspiracy are not hearsay when offered against a defendant. FED. R.EVID. 801(d)(2)(E). However, to admit such evidence, the court must determine that the government has demonstrated by a preponderance of the evidence that as to each defendant "1) a conspiracy existed, 2) the defendant and the declarant were members

thereof, and 3) the proffered statement(s) were made during the course of and in furtherance of the conspiracy." *United States v. Cox,* 923 F.2d 519, 526 (7th Cir.1991). The court may, in making the determination, examine the hearsay statements sought to be admitted. *Bourjaily v. United States,* 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987).

## I. *EXISTENCE OF THE CONSPIRACY*

All the defendants in this case are charged in the narcotics conspiracy alleged in Count I of the Superseding Indictment. According to the government, the overall conspiracy extended from 1980 through 1991. During this time, the conspiracy caused the delivery of over 100 kilograms of cocaine into the Chicago area from southern Florida. The cocaine was transported by couriers, primarily in racing cars and other vehicles. Naturally enough, the conspiracy allegedly also transported cash from Chicago to Florida.

According to the government's proffer, evidence of the existence of the conspiracy will include: (1) the testimony of unindicted co-conspirators who were personally involved in procuring, transporting, storing and/or selling cocaine; (2) the testimony of immunized witnesses describing their cocaine-related relationships with defendants; (3) the testimony of defendants' cocaine customers; (4) the testimony of paid informants; (5) the testimony of undercover Drug Enforcement Agency agents who purchased cocaine from several defendants and observed transactions or took part in cocaine seizures; and (6) corroborative evidence including undercover tapes, telephone records, personal telephone books, narcotics ledgers, photographs, leases, deeds, bank records, automobile registrations, and other financial records.

## II. *EACH DEFENDANT'S PARTICIPATION IN THE CONSPIRACY*

■ Once the charged conspiracy or joint venture is established, substantial evidence is required to connect a defendant to it. *United States v. de Ortiz,* 907 F.2d 629, 635–36 (7th Cir.1990), *cert. denied,* 498 U.S. 1029, 111 S.Ct. 684, 112 L.Ed.2d 676 (1991). The court may consider the conduct, knowledge and statements of the defendants and others in establishing their participation. *United States v. Baskes,* 687 F.2d 165, 169 (7th Cir.1981). The court may "reach the necessary level of satisfaction [to admit coconspirator statements] at least in part on the basis of the hearsay." *de Ortiz,* 907 F.2d at 634.

■ A defendant joins a conspiracy if he agrees with a conspirator to one or more of the common criminal objectives set forth in the indictment; it is immaterial whether the defendant knows, has met with, or has agreed with every conspirator. *United States v. Boucher,* 796 F.2d 972, 975 (7th Cir.1986). Furthermore, the government need not prove that a defendant knew every detail of the conspiracy or played a more-than-minor role in the conspiracy. *United States v. Liefer,* 778 F.2d 1236, 1247 n. 9 (7th Cir.1985). Additionally, any of the defendants may be found to have participated in a conspiracy even if they joined or terminated their relationship with core conspirators at different times.[1] *See United States v. Ramirez,* 796 F.2d 212, 215 (7th Cir.1986). The determination is individual, each defendant being entitled to separate consideration of his alleged participation.

The Government's *Santiago* Proffer on the Superseding Indictment ("Government's Proffer") is a summary of the facts and statements establishing the existence of a conspiracy and each defendant's participation in the conspiracy. The evidence discussed herein does not exhaust the evidence the government proffers.

Each defendant is now considered in turn:

### A. *Christopher Richard Messino*

Christopher Richard Messino is alleged, along with his brother, Clement, to be an operator of the "major cocaine organization."

---

1. A defendant, even if not an "agreeing" member of the conspiracy, may also be found guilty of conspiracy if he knew of the conspiracy's existence at the time of his acts, and his acts knowingly aided and abetted the conspiracy. *United States v. Kasvin,* 757 F.2d 887, 890–91 (7th Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 572 (1985).

(Government's Proffer at 5.) Christopher Richard Messino's participation in the conspiracy will be established by testimony of witnesses including George Thorpe, alleged to be his "right hand man." (Government's Proffer at 13.) Thorpe allegedly directly participated with Christopher Richard Messino, transporting cocaine, delivering cocaine, and collecting money.

### B. *Clement Messino*

The government maintains Clement Messino was a "jack-of-all-trades" of the operation, being involved in the "transportation, financing, storing and distribution of the cocaine." (Government's Proffer at 6.) Clement is alleged to be on the same level of responsibility for the operation as his brother, Christopher Richard. The government hopes to connect Clement Messino to the conspiracy through the testimony of George Thorpe, who had direct contact with Clement Messino regarding narcotics transactions over a period of years. The government represents that other witnesses can testify to Clement Messino's participation as well, including Robin Hunt, a former girlfriend of Christopher B. Messino.

### C. *Michael Homerding*

The government maintains Michael Homerding was one of the "initial brokers" of the cocaine transported into the Chicago area, and that he had contacts with the organization's south Florida cocaine contacts. (Government's Proffer at 7.) The government will establish as much through George Thorpe, who dealt directly with Homerding, as well as other witnesses.

### D. *Donald Southern*

The government alleges Donald Southern was, like Homerding, a south Florida cocaine conduit. Southern arranged for delivery and in turn received large amounts of cash from Clement Messino. The government will establish the delivery of cash to Donald Southern through testimony of witnesses who transported the cash to south Florida. Additionally, Robin Hunt may know of Southern's connections to the organization.

### E. *William Underwood*

William Underwood is alleged to have been involved in the transportation, storage and distribution of the cocaine. Some of Christopher Richard Messino's purchases have been hidden under Underwood's name. Underwood's participation will be established through witness testimony, including that of George Thorpe, who has first-hand knowledge about each coconspirator. Robin Hunt also had knowledge of Underwood's own cocaine use.

### F. *Christopher B. Messino*

Christopher B. Messino ("Chris, Jr.") is Christopher Richard Messino's son. Chris, Jr., is alleged to have been involved as a distributor and courier for almost the entire conspiracy period. The government will establish Chris, Jr.'s participation through several witnesses, including Robin Hunt, an old girlfriend who the government says heard and observed much about Chris, Jr.'s participation, as well as about the overall conspiracy. Hunt is said to have heard damaging admissions from Chris, Jr., himself, and to have been present when Chris, Jr., used cocaine.

### G. *Blaise Messino*

Blaise Messino is also a son of Christopher Richard Messino. He is alleged to have acted as a courier and a distributor of small quantities of cocaine. Robin Hunt is said to have been present when Blaise Messino used cocaine, and through her association with Chris, Jr., knows of Blaise Messino's involvement. Again, George Thorpe is said to have first-hand knowledge of all the defendants' participation.

### H. *Paul Messino*

Paul Messino is also a son of Christopher Richard Messino. Paul Messino acted as a cocaine courier from south Florida to the Chicago area. He also sold small quantities of cocaine on several occasions. The government will establish Paul Messino's participation also through George Thorpe, Robin Hunt and other witnesses.

## I. *Thomas Hauck*

In addition to acting as Christopher Richard Messino's "gofer and houseboy" (Government's Proffer at 9), Thomas Hauck is alleged to have been involved in the transportation of cocaine from Florida to Illinois. For Hauck's participation the government proffers George Thorpe as well as Robin Hunt, who has knowledge of Hauck's cocaine use.

## J. *Gray Chrystall*

Gray Chrystall is alleged to have acted as a cocaine courier after 1988. The government says it has a witness who accompanied Chrystall to Florida to pick up kilogram quantities of cocaine for the organization. Additionally, George Thorpe had direct dealings with Chrystall regarding the operation.

## K. *Daniel Shoemaker*

Daniel Shoemaker is alleged to have been a cocaine distributor closely aligned with Christopher B. Messino. He also allegedly stored cocaine. Among the government's evidence regarding Shoemaker's participation is Robin Hunt's having observed Shoemaker's participation.

## L. *Lawrence Thomas*

Lawrence Thomas allegedly distributed cocaine for the organization. The government's evidence against him includes a confidential informant's purchase and George Thorpe's testimony.

## III. STATEMENT MADE "IN FURTHERANCE" OF THE CONSPIRACY

In determining whether a statement was made "in furtherance" of the conspiracy or joint venture, courts look for a reasonable basis upon which to conclude that the statement furthered the conspiracy. *United States v. Shoffner,* 826 F.2d 619, 628 (7th Cir.), *cert. denied,* 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987). Under the reasonable basis standard, a statement may be susceptible to alternative interpretations and still be "in furtherance" of the conspiracy; the statement need not have been exclu-

sively, or even primarily, made to further the conspiracy in order to be admissible under the coconspirator exception. *Id.* In *Garlington v. O'Leary,* 879 F.2d 277 (7th Cir. 1989), the Seventh Circuit spoke to this issue:

A coconspirator's statement satisfies the "in furtherance" element of Rule 801(d)(2)(E) when the statement is "part of the information flow between conspirators intended to help each perform his role." *United States v. Van Daal Wyk,* 840 F.2d 494, 499 (7th Cir.1988). Statements that further the objectives of a conspiracy can take many forms, including statements made to recruit potential coconspirators, *see United States v. Shoffner,* 826 F.2d 619, 628 (7th Cir.), *cert. denied,* 484 U.S. 958, 108 S.Ct. 356 [98 L.Ed.2d 381] (1987); statements seeking to control damage to an ongoing conspiracy, *see Van Daal Wyk,* 840 F.2d at 499, statements made to keep coconspirators advised as to the progress of the conspiracy, *see United States v. Potts,* 840 F.2d 368, 371 (7th Cir.1987); and statements made in an attempt to conceal the criminal objectives of the conspiracy, *see United States v. Kaden,* 819 F.2d 813, 820 (7th Cir.1987); *United States v. Xheka,* 704 F.2d 974, 985–86 (7th Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486 [78 L.Ed.2d 682] (1983).

*Garlington,* 879 F.2d at 283–84 (internal citations edited). However, "[n]arrative declarations, mere 'idle chatter,' and superfluous casual conversations" are not statements made in furtherance of a charged conspiracy. *United States v. Doerr,* 886 F.2d 944, 951 (7th Cir.1989). Finally, it is immaterial that statements otherwise "in furtherance" of the conspiracy were made to a government witness, informant or agent. *United States v. Mealy,* 851 F.2d 890, 901 (7th Cir.1988).

The statements the government seeks to admit include statements pertaining to "(1) membership and roles in the conspiracy, (2) recruiting of transporters, (3) the formulation of transportation plans, (4) the methods by which cocaine transportation [was] to be or had been taken, (5) reports concerning the status or success of cocaine ventures, (6) the division of proceeds, (7) avoidance of detection by law enforcement, (8) the use of violence and threats, (9) the storage of cocaine and cocaine proceeds." (Government's Prof-

fer at 20–21.) These categories appear to fit into the definition of statements in furtherance of a conspiracy.

### CONCLUSION

After reviewing the proffer submitted by the government, the court finds that the government has established, by a preponderance of the evidence, that the coconspirator statements at issue fall within the scope of Rule 801(d)(2)(E) of the Federal Rules of Evidence. Based upon the *Santiago* proffer, it is more likely than not that a conspiracy existed, that defendants participated in the conspiracy, and that statements were made "during the course of and in furtherance of" the conspiracy. As a preliminary matter therefore the statements are not hearsay and are admissible against the defendant coconspirators. In this circuit, however, the trial judge has the option of conditionally admitting the coconspirator declaration evidence subject to actual proof of these matters at trial. *See United States v. Santiago,* 582 F.2d at 1131; *United States v. Cox,* 923 F.2d at 526. The court exercises that option here.

Accordingly, for the reasons stated above, the government's evidentiary proffer as to coconspirator statements is conditionally admitted pursuant to Rules 104(a), (b) and 801(d)(2)(E) of the Federal Rules of Evidence, subject to proof of the conspiracy at trial.