**UNITED STATES of America, Plaintiff,**

v.

**Christopher Richard MESSINO, Clement A. Messino, et al., Defendants.**

No. 93 CR 294.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 3, 1995.

L. Felipe Sanchez, U.S. Atty., Matthew Schneider, Kathleen Murdock, Asst. U.S. Attys., for U.S.

Marc W. Martin, Chicago, IL, for Christopher Richard Messino.

Douglas P. Roller, Naperville, IL, for Clement A. Messino.

Linda Amdur, Chicago, IL, for Michael Homerding.

Robert A. Loeb, Chicago, IL, for Donald Southern.

Donna Hickstein–Foley, Chicago, IL, for William Underwood.

Gerardo Gutierrez, Chicago, IL, for Christopher B. Messino.

Robert L. Gevirtz, Gevirtz, Born & Kissel, Northfield, IL, for Blaise Messino.

Joseph R. Lopez, Chicago, IL, for Paul Messino.

Walter Jones, Jr., Chicago, IL, for Thomas Hauck.

Edna Selan Epstein, Chicago, IL, for Gray Chrystall.

Leland Shalgos, Chicago, IL, for Daniel C. Shoemaker.

Steven A. Greenberg, Chicago, IL, for Lawrence Thomas.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court are two pretrial motions to suppress evidence. The court has previously described the indictment in this case. *See United States v. Messino,* 852 F.Supp. 652, 653–54 (N.D.Ill.1994); *see also,* 865 F.Supp. 511 (N.D.Ill.1994); 855 F.Supp. 973

**1038**

(N.D.Ill.1994); 855 F.Supp. 955 (N.D.Ill. 1994); 852 F.Supp. 657 (N.D.Ill.1994); 842 F.Supp. 1107 (N.D.Ill.1994). The court therefore will proceed directly to disposition of the motions.[1]

## I. DEFENDANT CHRISTOPHER RICHARD MESSINO'S MOTION TO SUPPRESS

Defendant Christopher Richard Messino has moved to suppress various items seized from his Blue Island, Illinois, home during execution of four warrants of seizure and monition in the course of a civil forfeiture prosecution. The government's theory of the legality of the contested seizures is the plain view doctrine. The court therefore held a hearing to air the facts surrounding the seizures. The following discussion constitutes the court's findings of fact and conclusions of law from the credible evidence of record on the motion.

### A. Background Law

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, and supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The prohibition against unreasonable searches and seizures has been read such that as a general rule any search or seizure without a warrant is unreasonable. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389

U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnote omitted). The consequences of a search or seizure being in violation of the Fourth Amendment is generally suppression of the evidence from introduction in the prosecution's case-in-chief. *United States v. Burns,* 37 F.3d 276, 278–79 (7th Cir.1994).[2]

One of the exceptions to the warrant requirement is where an officer sees an item from a lawful vantage point with lawful access to the item, and it is immediately apparent to the officer that the item is contraband or incriminating evidence—the plain view doctrine. *Horton v. California,* 496 U.S. 128, 134–36, 110 S.Ct. 2301, 2306–07, 110 L.Ed.2d 112 (1990); *United States v. Wilson,* 2 F.3d 226, 232 (7th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1615, 128 L.Ed.2d 341 (1994). If the officer has probable cause to believe an item in his plain view is contraband or incriminating evidence, the officer may seize it without a warrant. *Arizona v. Hicks,* 480 U.S. 321, 326–27, 107 S.Ct. 1149, 1153–54, 94 L.Ed.2d 347 (1987).

The plain view doctrine is properly thought of as an exception applicable to the seizure following the officer's "plain viewing." The viewing is not considered a Fourth Amendment "search" in the first place. *Horton,* 496 U.S. at 133–34, 110 S.Ct. at 2306; *Hicks,* 480 U.S. at 324–25, 107 S.Ct. at 1152. It is the post-viewing seizure that needs the plain view doctrine to rescue it from the warrant requirement. Nonetheless, the issue may arise—as it does in this case—whether the officers have crossed the line from a plain view examination into a Fourth Amendment search. *Arizona v. Hicks* makes that much clear by holding that an officer's moving of stereo equipment (rather than merely inspecting without touching), constituted a Fourth Amendment search. *Hicks,* 480 U.S. at 324–25, 107 S.Ct. at 1152.

---

1. The court on December 16, 1994, entered a Memorandum Opinion and Order disposing of these two motions. On the court's own motion, it reconsidered portions of that Memorandum Opinion and Order. The December 16, 1994, Memorandum Opinion and Order is stricken and vacated.

2. The government offers no theory as to why exclusion would not be the proper remedy, so where the court finds a Fourth Amendment violation here, it suppresses the evidence.

■ The plain view exception has three elements: (1) The viewing officer must be looking from a lawful vantage point. To oversimplify, the plain view doctrine will not get an officer inside a house; it will only allow him to look around a little once lawfully inside, and seize any incriminating evidence he sees. (2) It must be immediately apparent to the officer that the seized items are contraband or incriminating evidence. (3) The officer must have lawful access to the seized object. *Horton*, 496 U.S. at 136–37, 110 S.Ct. at 2308; *United States v. Willis*, 37 F.3d 313, 316 (7th Cir.1994).

■ One aspect of the immediate apparency requirement is crucial to the court's analysis here, so is worth noting up front. As a general matter, "Fourth Amendment analysis is objective, not subjective." *United States v. McCarthy*, 862 F.2d 143, 148 (7th Cir.1988) (citing *Scott v. United States*, 436 U.S. 128, 137–38, 98 S.Ct. 1717, 1723–24, 56 L.Ed.2d 168 (1978)). Accordingly, the inquiry into the "reasonableness of a particular police activity" is "purely objective." *United States v. Trigg*, 878 F.2d 1037, 1040 (7th Cir.1989). *See generally* WAYNE R. LaFAVE, SEARCH AND SEIZURE § 3.2(b) (2d ed. 1987). The court finds no controlling precedent as to the objectivity of the immediate apparency requirement itself, but controlling cases discussing the objectivity of the Fourth Amendment reasonableness inquiry in general are read naturally to apply to this particular aspect of Fourth Amendment jurisprudence. *See* cases cited *supra.* Furthermore, the Supreme Court's rejection of the inadvertency requirement for a plain view seizure in *Horton v. California* can be read as a rejection of subjective inquiry as an element of plain view analysis in general. One of the *Horton* Court's reasons for holding that a plain view seizure need not be inadvertent was that "evenhanded law enforcement is best achieved by the application of objective standards of conduct rather than standards that depend upon the subjective state of mind of the officer." *Horton*, 496 U.S. at 138, 110 S.Ct. at 2308–09.

To say that the inquiry is objective, however, is not to say that the seizing officer's subjective perceptions may not ever be an input into the objective inquiry. As the Seventh Circuit stated in assessing the Fourth Amendment legality of an automobile stop, "[a] police officer's motive for arresting and subjective belief at the time of the arrest that he lacks probable cause may be relevant in determining what facts the officer actually did know at the time of the arrest, and may tip the scale toward finding that the officer lacked probable cause." *McCarthy*, 862 F.2d at 148 n. 3; *accord United States v. Gray*, 659 F.2d 1296, 1301 n. 8 (5th Cir.1981) ("[I]n a close case, the denial by those officials that probable cause existed may well tip the balance toward a finding of no probable cause.") (cited in *McCarthy*, 862 F.2d at 148 n. 3). The inclusion of a subjective inquiry, however, seems reserved for such a "close case," as the Seventh Circuit has noted with less than enthusiasm the possibility of such a subjective inquiry. *See United States v. Hope*, 906 F.2d 254, 258 (7th Cir.1990) ("The officer's subjective reasons, or 'motive', for stopping the defendant are relevant, *if at all*, only in establishing what facts the officer actually had knowledge of at the time of the arrest." (emphasis added)), *cert. denied*, 499 U.S. 983, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991).

■ Finally worth noting is the placing of the burden of proof. Plain view is thought of as an exception to the warrant requirement. *See Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (Stewart, J., plurality); *Willis*, 37 F.3d at 316. Consequently, it is the government's burden to show that the seizures claimed to be justified under plain view fit into the exception. *See United States v. Longmire*, 761 F.2d 411, 417 (7th Cir.1985) ("Those seeking to invoke an exception to the warrant requirement bear the burden of establishing that the circumstances required dispensing with that requirement."); *see also United States v. Jones*, 518 F.2d 384, 390–91 (7th Cir.) (Swygert, J., dissenting) ("[T]he Government failed to meet its burden of proof on the plain view issue.... [I]t has failed to prove all the essential elements of this exception."), *cert. denied*, 423 U.S. 997, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975). The

government must make the showing by a preponderance of the evidence.[3]

## B. Lawful Vantage Point and Lawful Access

 The government's claim of lawful vantage point rests on warrants executed at Christopher Richard Messino's Blue Island home. The situation has been complicated because there is no dispute that one of the four warrants violates the principle of *United States v. James Daniel Good Real Property,* — U.S. —, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), which held that seizure of real property, pursuant to civil forfeiture, after a mere *ex parte* hearing violates due process. One of the four warrants is for the seizure of the real property. The other three warrants, however, are for personalty, and so *Good* is not implicated for those warrants. *See Good,* — U.S. at —, 114 S.Ct. at 500. Furthermore, defendant Christopher Richard Messino has not attacked the validity of the three personalty warrants. As the court has previously held, therefore, the three personalty warrants gave the seizing officers a lawful vantage point.[4] Inside the house lawfully, the seizing officers furthermore had lawful access to seized items seen in plain view, leaving only the issue of immediate apparency.

## C. Immediate Apparency

The sole witness at the hearing was Kevin L. Phillips, Special Agent with the Criminal Investigation Division of the Internal Revenue Service, who was the team leader for the approximately eight other agents conducting the seizure at the Messino house. (Report of Proceedings ("Tr.") 11, 15) The warrants were executed on September 13, 1991. Special Agent Phillips had been investigating tax and narcotics allegations against Christopher Richard Messino since 1988 or 1989. (Tr. 23.) The court found Special Agent Phillips' testimony generally credible.

### 1. Government Exhibit 1: The Rolodex

 Special Agent Phillips seized a Rolodex from atop Christopher Richard Messino's desk. On direct examination Special Agent Phillips testified that he seized the Rolodex because "Mr. Messino was being investigated for income tax crimes as well as narcotics violations. So the Rolodex was taken because it had financial leads in it that related to the income tax investigation, as well as possible leads for the narcotics investigation." (Tr. 14.)

Special Agent Phillips had been investigating Christopher Richard Messino for approximately two years at the time of the seizures. He had read the affidavit of Special Agent Michael Priess, also of the Criminal Investigation Division of the Internal Revenue Service, cataloguing in detail the government's basis for alleging probable cause that Christopher Richard Messino's property was "guilty" in a civil forfeiture sense. This affidavit extensively discussed Christopher Richard Messino's suspected large-scale narcotics trafficking. Special Agent Phillips knew he was executing civil forfeiture warrants, which must have been preceded by a judicial proba-

---

3. The court has been unable to locate (nor have the briefs directed it to) a controlling case directly on point discussing the standard of proof on the plain view issue. Other cases in separate contexts for a motion to suppress have used the preponderance of the evidence standard, *e.g., Longmire,* 761 F.2d at 416–17 (voluntariness of confession), so it seems only logical to apply that standard here. In any event, where the defendant's motion is granted, the government failed to meet the preponderance standard, so it would have no effect on the motion in that regard to assign a more strict standard; where the motion is denied, the government in the court's view has met a burden even as high as beyond a reasonable doubt. While undoubtedly the allocation of the *burden* of proof has at times determined the outcome, the *standard* of proof has in no instance been determinative.

4. Defendant has never forwarded a theory why given the uncontested validity of the three personalty warrants, the *Good* problem with the realty warrant means the officer did not have a lawful vantage point. The government had previously forwarded a theory of non-retroactivity or good faith regarding the *Good* problem, but has since abandoned the theory. Indeed, in the parallel civil forfeiture proceeding, the *Good* problem appears to have prompted the government to give back the house. *See United States v. Michelle's Lounge,* 39 F.3d 684, 690 (7th Cir.1994). Accordingly, the court has never reached the question of what to do if the realty warrant were the only possible basis for lawful vantage point.

ble cause finding. In a Rolodex, of course, a person normally keeps oft-used names, addresses and phone numbers. A narcotics dealer's oft-used names, addresses and phone numbers are likely to be incriminating evidence. And the fact that an item is a Rolodex is easily determined from a quick glance at the item. Therefore, based on facts known to Special Agent Phillips, he had probable cause to believe the Rolodex, which was in his plain view, was incriminating evidence.

There are perhaps indications that, subjectively, Special Agent Phillips was not in a proper plain view frame of mind:

Q: When you looked at that Rolodex, you didn't see anything immediately incriminating about it, did you?

A: No.

Q: You picked it up, did you not?

A: Yes.

Q: You examined it?

A: Yes.

Q: You have since examined it, since you took it out of the residence?

A: Yes.

Q: And it's your testimony that this Rolodex has financial leads relating to the income tax investigation?

A: Yes.

Q: How, from just looking at the Rolodex, without moving it, can you tell it has financial leads in it?

A: I could not.

(Tr. 25–26.) But these indications do not dictate a contrary conclusion where, as here, the court easily finds that, objectively speaking, the facts known to the officer provided probable cause.

Accordingly, insofar as it seeks suppression of Government Exhibit 1, defendant Christopher Richard Messino's motion is denied.

### 2. *Government Exhibit 2– A: Business Cards*

■ Special Agent Phillips also seized a stack of rubber-banded business cards from the Messino home (Government Exhibit 2–A). Based on facts known to Special Agent

Phillips, he had probable cause to conclude this item, in his plain view, was incriminating evidence. Under the same analysis employed for Government Exhibit 1, the frequently used business contacts of a person more probably than not a narcotics trafficker would likely yield incriminating evidence.

The testimony of Special Agent Phillips regarding the business cards progressed much the same as the testimony about the Rolodex. Special Agent Phillips testified on direct that his basis for seizure of the business cards was that they "had names of business associates that [Messino] had business contact with." (Tr. 15.) And again on cross examination Special Agent Phillips acknowledged that, subjectively, his suspicions were based on his search, not on his plain view observation:

Q: Your testimony was that you picked— you seized these business cards because they also contained financial leads relating to the income tax investigation?

A: Correct.

Q: In just looking at those business cards rubber-banded you can't tell if there is any financial leads in there, can you, sir?

A: No.

Q: You picked up those cards?

A: Yes.

Q: And you examined them?

A: Yes.

(Tr. 27–28.) But as with Government Exhibit 1, the court here reached the probable cause conclusion on an objective basis, rendering largely irrelevant Special Agent Phillips' subjective impressions.

Accordingly, insofar as it sought suppression of Government Exhibit 2–A, the stack of rubber-banded business cards, defendant Christopher Richard Messino's motion is denied.

### 3. *Government Exhibit 2: Address Book*

■ Special Agent Phillips testified on direct examination that he seized Government Exhibit 2, a blue address book with the word "ADDRESSES" on the cover, because

it "contained names of witnesses and co-defendants in the case. It was taken ... because it had leads for the financial investigation as well as the narcotics investigation." (Tr. 15.) Cross examination on the address book proceeded as on the Rolodex and business cards, indicating that from a subjective point of view Special Agent Phillips did not reach the conclusion the address book was incriminating evidence until he picked it up and examined it further (Tr. 28–30), a procedure barred by *Arizona v. Hicks* where probable cause does not precede the further examination. But for reasons described above regarding Government Exhibits 1 and 2–A, the court finds Special Agent Phillips had probable cause, upon seeing the address book in plain view, to conclude that the address book was incriminating evidence.

Accordingly, insofar as it seeks suppression of Government Exhibit 2, the blue address book, defendant Christopher Richard Messino's motion is denied.

### 4. *Government Exhibit 3: Police Book*

■ Government Exhibit 3 is a blue, thin, oblong book, identified as an Illinois Police Book listing vehicles purchased and sold by an automobile dealership. (Tr. 17–18, 31–32.) On the front cover of the book in easily seen type are the words "New Revised Record of The Purchase, Sale or Exchange of New and Used Motor Vehicles." (Government Ex. 3.) There is no identification of the book on its back or its spine. (*Id.*)

On direct examination Special Agent Phillips testified the basis for seizure was that "[t]he purchase and sales of vehicles recorded in the book related directly to income and losses pertaining to the income tax investigation. There is also names of witnesses, defendants, in the book who had purchased vehicles." (Tr. 18.) Special Agent Phillips' first justification for seizing a Police Book applies regardless of the contents. The court finds Special Agent Phillips only would have had probable cause to seize the Police Book once he determined that is what it was. What is problematic is whether Special Agent Phillips saw the item was a Police Book using his plain view, or he instead made this determination after an *Arizona v. Hicks* -type illegal extension of the view into

a search. The court finds that Special Agent Phillips only determined, and only could have reasonably determined based upon facts known to him, that Exhibit 3 was a Police Book after picking it up and examining it; that determination was not made in his plain view observation.

The basis for the court's factual finding is the testimony elicited from Special Agent Phillips on cross examination. Special Agent Phillips testified that the Police Book was found "in the desk." He "believed it was closed ... [and that] it was in one of the drawers." Special Agent Phillips did not recall if the drawer was closed or not, but thought it was in an upright drawer, as you would keep files in. (Tr. 30.) It was not absolutely clear whether Special Agent Phillips identified the book as a Police Book before going through the desk. But the agent's inability to fully recall the circumstances of his finding and identifying the Police Book suggests that one way or the other Special Agent Phillips could not identify Exhibit 3 as a Police Book until he illegally picked it up for further examination. That is the court's factual finding on Exhibit 3.

The court finds that Special Agent Phillips lacked probable cause to seize Government Exhibit 3, the blue Illinois Police Book. The agent's examination of the Police Book was a baseless search, as in *Hicks,* and the results of that search may not be the basis for a probable cause determination. Accordingly, the warrantless seizure of Government Exhibit 3 was in contravention of the Fourth Amendment. Defendant's motion in that regard is granted, and Government Exhibit 3 is suppressed as evidence.

### 5. *Government Exhibits 4, 5, 6, and 7*

■ The outcome regarding Government Exhibits 4, 5, 6, and 7 depends primarily on the fact that it is the government's burden of proof on the motion. Government Exhibit 4 is a collection of bank records, cancelled checks, bank statements, a check register, and other miscellaneous financial documents. Government Exhibit 5 is a number of documents pertaining to defendant's taxes. Government Exhibit 6 is a number of money orders and cashier's checks. Government

Exhibit 7 is a small notebook marked "Dick's Notes." Special Agent Phillips reported that these documents were brought to him by other agents. (Tr. 17–20.) His testimony even in that regard was equivocal (at least on Government Exhibit 4), stating that *"probably various agents would have brought these to me." (Id.* (emphasis added).) It is impossible from the record presented by the government to determine whether the incriminating nature of the items collectively constituting Government Exhibits 4, 5, 6, and 7 was immediately apparent to the "various agents." Were these items sitting out on a counter, or were they in a locked drawer or under something else? In a plain view determination, on this much rests.

At this point it is vital to remember that the government's only claimed basis in their final prehearing submission for seizure of the items constituting their Exhibits 4, 5, 6, and 7 is plain view. (*See* United States Submission of List of Items Seized from Defendant Christopher Richard Messino's Residence at 2939 West 127th Street, Blue Island, Illinois, Which the United States May Seek to Introduce at Trial ("United States Submission") at 3–4, ¶ 5(a), (b), (f), (1).) [5] If plain view is the sole claimed basis, then the government's failure to establish immediate apparency is determinative. The assertion of plain view fails.

Accordingly, as regards Government Exhibits 4, 5, 6, and 7, defendant's motion is granted, and said exhibits are suppressed as evidence.

#### 6. *The Seized Gun*

In the government's prehearing submission it identified "One Walther PPK 7.65 mm. pistol, number 363054" as proffered evidence it may introduce that was seized from the Blue Island home during the execution of the warrants at issue. (United States Submission at 3, ¶ 5(g).) The item was referenced but not introduced as an exhibit at the hearing (Tr. 13.) Special Agent Phillips testified, and the court finds, that the gun was secured for the purposes of the safety of the officers. (*Id.*) Defendant does not challenge that aspect of the search—Special Agent

Phillips' initial seizure of the gun. Rather, defendant contests whether the gun was taken from the premises as a tool of the narcotics trade. (*See* Defendant Christopher Richard Messino's Posthearing Memorandum of Law in Support of Motion to Suppress at 13–15.)

■ Defendant makes much of the fact that Special Agent Phillips had prior knowledge of a gun in the house. But *Horton v. California* makes clear that there is no inadvertency requirement in the plain view doctrine. *Horton,* 496 U.S. at 137–42, 110 S.Ct. at 2308–10. Whether Special Agent Phillips was anticipating finding a gun is therefore irrelevant.

■ What is determinative is the probable cause determination, and the court finds Special Agent Phillips had probable cause to believe the gun was incriminating evidence. As discussed above, Special Agent Phillips had been involved in and had knowledge of the narcotics investigation of Christopher Richard Messino. That investigation had resulted in four civil forfeiture warrants. Given his knowledge, Special Agent Phillips' conclusion that the gun was probably incriminating evidence was justified. He relied on the knowledge that guns are tools of the narcotics trade, an assumption the Seventh Circuit has validated. *See United States v. Cooper,* 19 F.3d 1154, 1163 (7th Cir.1994).

Accordingly, as it pertains to the gun referenced at the hearing, defendant's motion to suppress is denied.

#### D. *Summation*

Defendant Christopher Richard Messino's Motion to Suppress is granted in part and denied in part as stated in this Memorandum Opinion and Order. Government Exhibits 3, 4, 5, 6, and 7 from the hearing on defendant Christopher Richard Messino's motion are suppressed as evidence. Further evidence attributable to leads from said exhibits is suppressed according to law.

---

**5.** The court holds the government to its prehearing stance, which was reasserted in its posthearing memorandum; the claimed basis for seizure on these items is plain view only.

## II. *DEFENDANT CLEMENT A. MESSINO'S MOTION TO SUPPRESS ILLEGALLY SEIZED EVIDENCE*

Defendant Clement Messino has also moved to suppress certain evidence. The court held a hearing on the motion and from the credible evidence of record makes the following findings of fact and conclusions of law. Part of the discussion herein concerns issues regarding the plain view doctrine considered above on Christopher Richard Messino's motion, so the court's legal conclusions in that regard are adopted for Clement Messino's motion. Both witnesses at the hearing, Sergeant Wayne Jacobson and Officer Wayne A. Jarocki, were generally credible.

### A. *The Initial Seizure of the Pistol (Government Exhibit 1)*

█ On August 23, 1990, Sergeant Wayne Jacobson, a supervisor of tow operations with the Chicago Police Department, noticed a car parked illegally in a handicapped space at the southwest corner of Clark and Washington Streets, Chicago, Illinois. From a lawful vantage point Sergeant Jacobson observed in plain view the butt-end of what appeared to be an automatic or semi-automatic pistol sticking out from under the seat. Enough of the weapon appeared that Sergeant Jacobson could identify the item. Through immediate apprehension, Sergeant Jacobson had probable cause to believe that the weapon was incriminating evidence of a violation of Illinois law, specifically 720 ILCS 5/24–1(a)(4),[6] which prohibits possession of, among other things, a pistol or revolver in a car. Sergeant Jacobson did not state directly that this was his reason for entering the car, but the court sees that as a fair inference from his testimony, as well as a reasonable objective conclusion. Sergeant Jacobson thus had probable cause to enter the car under the automobile exception to the warrant requirement. *See Arkansas v. Sanders,* 442 U.S. 753, 760, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979). This Sergeant Jacobson did through a "slim-jim" device. Sergeant Jacobson seized the weapon and from that

time on either he or a fellow officer had control over the weapon.

The court finds that all elements of the plain view doctrine have been proven by a preponderance of the evidence. Regarding Government Exhibit 1, therefore, defendant's motion is denied.

### B. *Evidence Seized During the Arrest*

In addition to seizing a revolver, Sergeant Jacobson called for a Tactical Unit ("TAC Unit") to respond to the scene at Clark and Washington. TAC Unit officers ultimately arrested Clement Messino as he was getting into the car parked at Clark and Washington. Wayne A. Jarocki, one of four arresting TAC Unit officers dispatched to the scene, testified at the suppression hearing.

#### 1. *Effect of Prior State Court Determination*

Before making findings regarding that arrest, however, the court must consider the effect of a state court determination regarding the arrest and surrounding circumstances. (*See* Defendant Clement Messino's Motion to Suppress Illegally Seized Evidence Ex. A. (hearing transcript).) Defendant argues that the state court finding should be given full collateral estoppel effect; while the government argues that the court should ignore the finding.

█ The parties here dive directly into the issue of collateral effect, as if the two proceedings at issue involved the same parties. Since on the face of things the prosecuting parties are not identical, and there is no indication that the parties are in effect identical, *see United States v. Davis,* 906 F.2d 829 (2d Cir.1990), the collateral estoppel argument is a nonstarter. *See* WAYNE R. LAFAVE, SEARCH AND SEIZURE § 11.2(g), at 268 (2d ed. 1987); *see also United States v. Brocksmith,* 991 F.2d 1363, 1367 (7th Cir.) ("Collateral estoppel ... holds only between the same parties, whereas the United States was not represented in the prior case."), *cert. denied,* —— U.S. ——, 114 S.Ct. 569, 126 L.Ed.2d 468 (1993). Professor LaFave comments that "for a ruling on a motion to

---

6. Ultimately, defendant was charged with a different, but related, state weapons crime. That

development is irrelevant for this court's purposes.

suppress in a prior case to have either conclusive or presumptive effect in a later case, there must be an identity of parties." *Id.* WAYNE R. LAFAVE, SEARCH AND SEIZURE § 11.2(g), at 268. Defendant does not suggest there was a suppression ruling in the state proceedings, only that there was a finding of no probable cause for the arrest. Professor LaFave's analysis does not become less applicable, however, by virtue of the fact that the prior proceeding (even as characterized by defendant) did not go all the way to a suppression order. If anything, that variation would tend to assign even less effect to the prior proceeding. In any event, the court agrees with the government, and finds the prior state court finding referenced in defendant's motion does not preclude this court's independent examination of the legality of the arrest of Clement Messino.

### 2. *Legality of the Arrest of Clement Messino*

■ According to the testimony of Officer Jarocki, Sergeant Jacobson informed the TAC Unit officers of what he had observed. Sergeant Jacobson left the scene since he was in uniform, and the TAC Unit officers began surveillance to see who would enter the parked car. Officer Jarocki saw a male approach the car from the driver's side, and a female approach the car from the passenger side. Officer Jarocki saw the man, whom he identified in court as defendant Clement Messino, open the door of the car and begin to enter the car.[7] At that time the TAC Unit officers arrested Clement Messino for unlawful possession of a weapon. It was reasonable, under the totality of the circumstances, for the arresting officers to believe Clement Messino had committed a crime. The officers, therefore had probable cause for this arrest, and the arrest consequently was not in violation of the Fourth Amendment. *See, e.g., United States v. Robinson,* 30 F.3d 774, 785 (7th Cir.1994). Pursuant to that arrest defendant was detained in the Chicago Police Department First District lockup.[8]

7. How far defendant Clement Messino got into the car before the arrest was of no consequence to the court's findings and conclusions.

8. The government has asked to withdraw its Exhibit 4 and replace it with the original state court

### C. *Fruits of the Arrest*

Finally at issue is whether any Fourth Amendment violations occurred in the course of and after Clement Messino's arrest. Defendant here makes arguments based on an assumption of the legality of the arrest, and those arguments must be considered.

■ Clement Messino when arrested had in his possession a briefcase, which the police officers took custody of when arresting him. This custody was lawful. The police also conducted an inventory search of the briefcase, the legal scope of which is disputed. Officers wrote up an inventory sheet (Government Exhibit 2). Police investigators also photocopied a notebook and address book retrieved from the briefcase. Those photocopies are Government Exhibit 3. Inventory search is the only exception to the warrant requirement that the government forwards to avoid suppression of Exhibit 3.

■ Having lawfully taken custody of defendant's property, the police were entitled, as a general matter, to a warrantless routine inventory search. *Colorado v. Bertine,* 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987); *Illinois v. Lafayette,* 462 U.S. 640, 646, 103 S.Ct. 2605, 2609, 77 L.Ed.2d 65 (1983); *United States v. McGuire,* 957 F.2d 310, 314–15 (7th Cir.1992). As a general matter, some sort of inventory was routine practice for the Chicago Police Department. The basis for this finding is Officer Jarocki's testimony and the information on the inventory form itself (Government Exhibit 2).

■ What is troublesome is not the inventory of property, but the opening of the briefcase. There was no record made that a policy regarding the opening of inventoried containers existed. This was the case in *Florida v. Wells,* 495 U.S. 1, 3, 110 S.Ct. 1632, 1634, 109 L.Ed.2d 1 (1990). According to the lower court there, "the record contained no evidence of any ... policy on the opening of closed containers found during

file regarding Clement Messino's arrest and prosecution from the events of August 23, 1990. The court grants such leave and designates the state-court file Government Exhibit 4–A.

inventory searches." *Id.* That was also the case here; the issue was not addressed by either government witness.[9] The *Wells* Court held that "absent such a policy, the instant search was not sufficiently regulated to satisfy the Fourth Amendment," and the evidence found upon the opening of an inventoried suitcase was properly suppressed. *Id.* at 5, 110 S.Ct. at 1635. For the same reason, defendant's motion regarding Exhibit 3 is granted and Exhibit 3 is suppressed as evidence.[10]

 Even assuming *arguendo* that the opening of the briefcase was routine and lawful, there is no indication that a further examination of the pages of the address book and notebook would be routine. The government has not proven that. Indeed such an investigatory search beyond the inventory violates the Fourth Amendment. "[A]n inventory search must not be a ruse for a general rummaging in order to discovery incriminating evidence." *Wells*, 495 U.S. at 4, 110 S.Ct. at 1635. Officer Jarocki, in fact, acknowledges that the further investigation of the notebook and address book were outside the inventory, as was the photocopying that created Government Exhibit 3, attributing that further search to the efforts of the Intelligence Division. Significantly, defendant elicited from Officer Jarocki that he had no knowledge why the Intelligence Division extended the search beyond routine inventory. (Tr. 38.) Thus, there was no record made to justify the warrantless search, which created Government Exhibit 3. This independent reason leads to suppression even without the failure of the government to establish a routine inventory policy of opening containers.

### D. *Summation*

Defendant Clement A. Messino's Motion to Suppress Illegally Seized Evidence is granted in part and denied in part as stated in this Memorandum Opinion and Order. Government Exhibit 3 from the hearing on defendant Clement A. Messino's motion is suppressed as evidence. Further evidence attributable to leads from said exhibit is suppressed according to law.

### CONCLUSION

On the court's own motion for reconsideration, its Memorandum Opinion and Order dated December 16, 1994, is stricken and vacated. Defendant Christopher Richard Messino's Motion to Suppress is granted in part and denied in part as stated in this Memorandum Opinion and Order. Government Exhibits 3, 4, 5, 6, and 7 from the hearing on defendant Christopher Richard Messino's motion are suppressed as evidence. Defendant Clement A. Messino's Motion to Suppress Illegally Seized Evidence is granted in part and denied in part as stated in this Memorandum Opinion and Order. Government Exhibit 3 from the hearing on defendant Clement A. Messino's motion is suppressed as evidence. Further evidence attributable to leads from said exhibits is suppressed according to law.

---

9. The court does not take Officer Jarocki's agreement that the inventory of the briefcase was done pursuant to basic procedure (Report of Proceedings ("Tr.") 34) as testimony that the opening of the container was routine and according to a container procedure.

10. The court wants to be clear here, lest the scope of the holding be overstated. For all the court knows, the Chicago Police Department might have a container inventory policy and that policy might comport with *Florida v. Wells*. The holding here only is that the government did not make the record.