**UNITED STATES of America,
Plaintiff,**

v.

**Christopher Richard ("Dick")
MESSINO and Clement
Messino, Defendants.**

**No. 93 CR 294.**

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 24, 1999.

---

Matthew M. Schneider, United States Attorney's Office, Chicago, IL, for plaintiff.

Douglas P. Roller, Roller & Associates, Chicago, IL, for Clement Messino, defendant.

Marc William Martin, Marc W. Martin, Ltd., Chicago, IL, for Christopher R. Messino, defendant.

### MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Before the court is the government's motion for reconsideration of the following order entered on September 9, 1998:

The motions of defendants Christopher R. Messino and Clement Messino to bar the testimony of William Underwood are granted. The government did not disclose Underwood would be a witness, much less the *key* witness, nor seek to supplement its *Santiago* proffer, until almost two weeks before trial. Pretrial motions were due July 20, 1998. *See* order of July 8, 1998. The prejudice to defendants by this untimely surprise is clear. In addition, serious conflict of interest issues would be raised as to Christopher R. Messino's counsel if this motion were not granted. [Emphasis in original].

The parties have exhaustively briefed the issues raised by the government's reconsideration motion and two evidentiary hearings have been held.[1] For the reasons set forth below, the motion must be denied.

### BACKGROUND

The convictions of Christopher R. ("Dick") Messino and Clement Messino were reversed and their case was remanded for retrial. *United States v. Underwood*, 122 F.3d 389 (7th Cir.1997). The government's ensuing motion for rehearing was denied. *United States v. Underwood*, 130 F.3d 1225 (7th Cir.1997). The United States Supreme Court denied the government's petition for certiorari. *United States v. Messino*, —— U.S. ——, 118 S.Ct. 2341, 141 L.Ed.2d 713 (1998). In January 1998, this court granted the government's motion to stay retrial until the Supreme Court ruled on its *certiorari* petition. [Doc. 1082]. Defendants vigorously objected to the stay and demanded immediate trial because at that time they had been in custody for five years. The court advised counsel to be prepared for trial in September 1998 if the Supreme Court denied *certiorari*. The day after the Su-

---

1. The transcript of the pretrial conference on September 2, 1998 is cited as "Tr. 9/2/98;" the evidentiary hearings on October 15, 1998 and February 1, 1999 are cited respectively as "Tr. 10/15/98" and "Tr. 2/1/99."

preme Court denied *certiorari,* this court issued a scheduling order setting the case for retrial on September 21, 1998. [Doc. 1097][2] A deadline of July 20, 1998 was set for filing non-duplicative pre-trial motions. [Doc. 1099]

This court had earlier advised counsel that the rulings of Judge Alesia, the original trial judge, were the law of the case absent a subsequent change in the law or the facts. In a published opinion five years ago, Judge Alesia ruled on the sufficiency of the government's pretrial written proffer of conspiracy evidence pursuant to *United States v. Santiago,* 582 F.2d 1128 (7th Cir.1978). *See United States v. Messino,* 855 F.Supp. 973 (N.D.Ill.1994). Judge Alesia reviewed *specific* co-conspirator statements that he ruled were provisionally admissible under Fed.R.Evid. 801(d)(2)(E). *Id.* at 977–78. The government did not amend its *Santiago* proffer before the July 20 deadline for non-duplicative pretrial motions, nor did the government ever request an extension of time to do so.

At a pretrial conference just two weeks before the long scheduled retrial, the court discussed the problem of issuing rulings on pending motions *in limine* before trial. Tr. 9/2/98 at 45. The three Assistant United States Attorneys who participated in the pretrial conference failed to disclose that they had just that day filed an amended *Santiago* proffer. The prosecutors filed the proffer, which would require a response from defendants and court review of new purported co-conspirator statements, without leave of court, without sending a courtesy copy to the court, and without any prior notice to defendants. The Assistant United States Attorneys apparently served the new *Santiago* proffer on defense counsel as they were leaving the courtroom following the pretrial conference. Defendants then filed emergency motions to bar the testimony outlined in the new proffer.

2. The court later advanced jury selection to September 18th on defendants' motion be-

## DISCUSSION

It should first be noted that the necessity of ruling on defendants' emergency motions without full consideration of all the underlying circumstances was occasioned by the manner in which the prosecution chose to file its supplemental *Santiago* proffer without prior notice or leave of court. Indeed, resolution of the issues on an emergency basis was necessary due to the impending trial, scheduled six months earlier, and the court's other commitments. Had government counsel acted more candidly and with minimal professional courtesy, the court and all counsel would have had at least a marginally better opportunity to address the difficult issues raised by the tardy proffer.

The court granted defendants' emergency motions because (1) the untimely supplemental *Santiago* proffer posed a prejudicial surprise; and (2) not granting the motion would result in serious conflict of interest issues as to Dick Messino's attorney, who claimed a previous attorney-client relationship with the witness identified for the first time in the supplemental proffer.

■ Motions to reconsider serve the purpose of correcting manifest errors of law or fact. *In the Matter of Prince,* 85 F.3d 314, 324 (7th Cir.), *cert. denied,* 519 U.S. 1040, 117 S.Ct. 608, 136 L.Ed.2d 534 (1996). The propriety of granting a reconsideration motion lies within the court's sound discretion. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1270 (7th Cir.1996). The court considers each aspect of its prior ruling in light of the subsequently developed record and the arguments of counsel.

## A. Timeliness of the Supplemental Santiago Proffer

■ The government justifies its delay by presenting the history of its negotia-

cause September 21 and 22 were religious holidays that might affect the jury pool.

tions for the cooperation of co-defendant William Underwood and the logistics of having Underwood transported from a Bureau of Prisons facility in South Dakota to Chicago. Underwood arrived in Chicago on August 7, 1998, but he did not actually agree to testify for the government until August 19, 1998. Tr. 10/15/98 at 52. It should be noted that Assistant United States Attorney Matthew M. Schneider, lead government counsel, wrote to the United States Marshal on July 8 and again on July 23, 1998, to request Underwood's production. Schneider described Underwood in both letters as a government witness in the retrial of this case. Gov.2d Supp.Memo., Ex. 1, 9.

The government acknowledges that at least since early July, it actively sought Underwood's testimony as a new co-conspirator witness. However, the government fails to explain why it did not move for an extension of time for filing pretrial motions or otherwise alert the court and defense counsel that it might seek a supplemental *Santiago* ruling.[3] Nor does the government explain why it filed its untimely supplemental proffer without prior notice or leave of court. Finally, the government is silent concerning its lack of candor at the pretrial conference two weeks before trial and two weeks *after* Underwood agreed to testify. At the pretrial conference, defense counsel inquired when rulings would be issued on their motions *in limine.* The court discussed the problem of ruling before trial, given the time constraints involved, and indicated that chambers would call counsel with the rulings as soon as practicable. Tr. 9/2/98 at 45. Under these circumstances, the prosecutors' unexplained failure to disclose that just earlier that day they filed a *Santiago* motion requiring an additional pretrial ruling is inexplicable. The court can only conclude that the failure of the government to bring the new *Santiago* issue to the court's

attention as expeditiously as possible was a tactical decision.

In sum, the government has not demonstrated manifest error in the court's finding that the supplemental *Santiago* proffer was untimely filed.

## B. Prejudicial Surprise

The obvious prejudicial surprise in expanding the scope of the *Santiago* proffer on the eve of retrial, and the attendant disruption of defense pretrial preparations, have been mooted in a temporal sense by the Court of Appeals order staying retrial pending resolution of the government's reconsideration motion. This is a relevant change in circumstances that the court takes into account. However, as discussed below, the delay occasioned by the government's interlocutory appeal does not remedy the conflict of interest dilemma raised by the underlying supplemental *Santiago* proffer.

## C. The Government's Notice Obligations Concerning Underwood

There are special circumstances that aggravate the government's tardiness in submitting a supplemental proffer; the untimeliness here is more than just a technical violation of this court's scheduling order. In declining to disqualify Dick Messino's attorney, Marc W. Martin, because Martin's law partners then represented Underwood, Judge Alesia noted:

> Currently neither of those defendants [Underwood and Dick Messino] is to be a government witness ... should one of the defendants decide to plead guilty, **or if there is even an offer by the government,** a reevaluation of the propriety of the law firm's joint representation will be in order. [Emphasis supplied]

*United States v. Messino,* 852 F.Supp. 657 (N.D.Ill.1994). Thus, it should have been clear to Schneider, who was also lead counsel for the government at the original trial,

---

**3.** In fact, the government has never asked this court for a pretrial ruling on its new *Santiago* proffer. Rulings on the admissibility of co-

conspirator statements are mandated before trial by the law of this Circuit. *Santiago,* 582 F.2d at 1133.

that if the prosecution **offered** Underwood a cooperation agreement to testify as a government witness, the propriety of Martin's representation of Dick Messino would require judicial reevaluation. Nevertheless, Schneider did nothing to bring this situation to the court's attention. The government not only ignored this court's scheduling order, but it also ignored Judge Alesia's clear warning that a government cooperation offer to either Underwood or Dick Messino would trigger a reevaluation of the conflict of interest implications.

## D. The Attorney–Client Dilemma

By far, the most problematic aspect of the new *Santiago* proffer relates to complex issues of attorney-client privilege and effective assistance of counsel raised by the new proffer. At the first evidentiary hearing, Martin stipulated with the government concerning the nature and history of his relationship with Underwood. Tr. 10/15/98 at 62–68.

Martin assisted his former partners in representing Underwood in the mid to late 1980's in an unrelated state case and in other legal matters. *Id.* at 63. In September 1991, Underwood consulted Martin and Martin's former law partner, Ed Genson, regarding a federal civil forfeiture matter; Underwood later referred Dick Messino to Martin, who represented Messino in the civil forfeiture action. *Id.* at 64.

While the forfeiture action was pending, the grand jury investigation in this case was apparently initiated, targeting both Underwood and Dick Messino; both were represented by Martin and Genson at that stage. *Id.* Genson and Martin were law partners at all material times, and they provided a joint defense effort during the grand jury investigation. *Id.* at 65.

When the indictment was returned in November 1993, Genson filed an appearance for Underwood; Martin appeared on behalf of Dick Messino. *Id.* The government moved for Judge Alesia to conduct a conflict of interest inquiry pursuant to Fed.R.Crim.P. 44(c). *Id.* Judge Alesia

thoroughly advised both defendants of possible conflicts in their joint law firm representation and their rights, including the right to cooperate with the government in exchange for sentencing benefits. *Id.* at 66. Both defendants asserted their right to be represented by counsel of choice and neither wished to cooperate with the government. *Id.* Accordingly, Judge Alesia found no conflict existed. *Id.*

Genson, Martin and another law partner, Terence P. Gillespie, engaged in joint trial preparation. *Id.* Genson and Gillespie withdrew their representation of Underwood before trial, and Judge Alesia appointed a Federal Defender panel attorney to represent Underwood. *Id.* at 67. The office of Underwood's new attorney was down the hall from the Genson firm. *Id.* After Genson and Gillespie withdrew, Underwood continued to informally consult Genson and Martin. *Id.*

Shortly before trial, Underwood met with the prosecutors to give them a proffer in preparation for a guilty plea; however, he did not agree to testify for the government. *Id.* At that time, Underwood was still informally consulting Martin and Genson. *Id.* at 68. After trial, Dick Messino appealed his conviction and Underwood appealed his sentence; the Court of Appeals consolidated their appeals. *Id.* Martin was lead counsel on appeal. *Id.* While incarcerated when this case was on appeal, Underwood continued telephone conversations with Martin and Genson until the United States Supreme Court proceedings [in Spring 1998]. *Id.*

Thus, it is undisputed that Underwood had privileged communications with Martin from the mid or late 1980's until Spring 1998. Underwood has declined to waive his attorney-client privilege as to communications with Martin and his former firm. Gov.Cons.Resp. to Defs. Emerg.Mots., Ex. A, ¶¶ 12, 13. More significantly here, Dick Messino has affirmed his desire to have Martin continue to represent him, but he has expressly declined to waive his right to conflict-free counsel. Tr. 2/4/99 at 6–7. It

is clear to the court that Martin cannot effectively represent Dick Messino in vigorously cross-examining Underwood.

At the court's request, Martin submitted his affidavit *in camera* with respect to another category of his conversations with Underwood after Genson withdrew from this case. *Id.* at 110, 120, 129. In these conversations, Underwood did not seek legal advice, but rather he related unprivileged communications with the government. Martin 11/24/98 Aff., ¶¶ 7–9. The court ordered Martin to disclose these unprivileged communications to counsel for co-defendant Clement Messino and government counsel; a hearing was set to determine whether Underwood would deny any potentially impeaching statements in the Martin affidavit, thus rendering Martin a potential impeachment witness. *See* Order of 12/21/98.[4]

At the hearing, Underwood declined to stipulate to the truthfulness of specific conversations cited in the non-privileged portions of Martin's affidavit. Tr. 2/1/99 at 45–46. Underwood claimed he could not recall several conversations, but he did not dispute the truth of the underlying subject matter. *Id.* at 33–34. Contrary to Martin's affidavit, however, Underwood denied he told prosecutors during his original proffer that Dick Messino did not know about his son Chris' "illegal purpose in Florida." *Id.* at 35–36. Underwood also contradicted Martin's assertion that Underwood told him the government wanted Underwood to say things that were not true about Dick Messino. *Id.* at 49–50. Nevertheless, counsel for Clement and Dick Messino took the position that because Underwood admitted "most" of the impeaching material in the Martin affidavit, Martin was no longer a potential defense witness. *Id.* at 48–49. The government responded that until Underwood actually testifies at trial, the possibility remains that defendants might assert a right to call Martin as a

witness to impeach Underwood on critical points where Underwood contradicts Martin's affidavit. *Id.* at 50–53. The court agrees that a conclusive determination of Martin's status as a potential impeachment witness cannot be made in advance of trial. And the fact remains that even if Martin were not a potential impeachment witness against Underwood, Dick Messino's right to conflict-free representation would be jeopardized if Martin cross-examines Underwood at trial.

The government suggests that problems concerning Martin's inability to effectively cross-examine Underwood could be solved by simply appointing another lawyer to represent Dick Messino just for that purpose. The government's solution for Martin's potential conflict of interest as an impeachment witness is to disqualify Martin and appoint new counsel for all purposes. Relying on the Supreme Court's decision in *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), the government asserts that it is Dick Messino's choice of counsel, not Underwood's testimony, that should "give way" due to Martin's conflict. Gov. 11/30/98 Reply at 6. However, *Wheat* recognizes the latitude that must be afforded trial judges in remedying a conflict situation, particularly on the eve of trial: "[t]he evaluation of the facts and circumstances of each case ... must be left primarily to the informed judgment of the trial court." *Wheat,* 486 U.S. at 164, 108 S.Ct. 1692.

In the unique context of this case, the government's proposed solutions are problematic. If this were not a protracted, complex case, the government's proposed appointment of new counsel would not impose a serious burden on Dick Messino's Sixth Amendment rights. However, this is an extraordinary situation. Martin has represented Dick Messino for eight years through a related civil forfeiture, during the eleven-week criminal trial before

---

4. The order set the hearing on January 12, 1999. However, the hearing was postponed because of a problem at the Metropolitan Correctional Center that prevented the release of defendants for transport to court.

Judge Alesia, as lead counsel in a successful joint defense appeal, in effectively resisting the government's petition for *certiorari* to the United States Supreme Court, and in preparing for retrial. Tr. 10/15/98 at 122–23. Without question, Martin is Dick Messino's counsel of choice. And just as clearly, Martin cannot be effectively replaced by new defense counsel at this late date.

Rule 44(c) directs courts in a joint representation situation to "... take such measures as may be appropriate to protect each defendant's right to counsel." A *per se* disqualification rule has been rejected by the Seventh Circuit. *United States v. O'Malley*, 786 F.2d 786, 790 (7th Cir.1986). The Sixth Amendment right to the effective assistance of counsel was meant to assure fairness in the adversary criminal process. *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). The determination of appropriate measures to assure representation that insures a fair trial must rest on the particular circumstances involved.

The court finds that the government's proposed solutions would unreasonably burden Dick Messino's Sixth Amendment right to effective assistance of counsel and would adversely affect his right to a fair trial. It would be a practical impossibility to appoint new counsel who has comparable experience and knowledge of this case. New counsel would have volumes of evidence and transcripts to analyze and absorb, as well as countless prior tactical decisions to review and reevaluate. It would delay these already unduly protracted proceedings for a significantly longer period of time for new counsel to develop a working knowledge of the evidence and issues, and then to formulate and prepare a defense. Moreover, the resulting additional significant delay in these proceedings would adversely impact the co-defendant, Clement Messino, whose joint retrial has been stayed awaiting a determination of these issues.[5]

### CONCLUSION

For the foregoing reasons, the September 9, 1999 order barring William Underwood's testimony was not a manifest error of fact or law. Accordingly, the government's motion for reconsideration is denied.

---

5. In addition, Clement Messino contends Underwood's testimony should be barred because the prosecution failed to disclose information favorable to the defense, which Underwood gave to prosecutors before the original trial. The government does not deny it failed to disclose information that impeaches or undercuts the reliability of two other prosecution witnesses. While the asserted disregard for professional responsibilities is troubling, the court does not base its conclusion on *Brady* grounds.